OPINION
{¶ 1} Plaintiff-appellant, Don Thompson, appeals from a Mahoning County Common Pleas Court decision granting summary judgment in favor of defendants-appellees, the City of Campbell and Mahoning County.
 {¶ 2} On March 3, 2000, appellant was driving on Hyatt Avenue in the City of Campbell, Mahoning County when, according to him, he drove over an improperly placed manhole cover. Appellant claims that the manhole cover rose up when one of his tires hit it and the cover then struck the underside of his car with such force that it caused his car to roll onto two wheels before dropping back down onto all four wheels. Appellant claimed that he sustained injuries as a result of the accident.
 {¶ 3} Appellant subsequently filed a complaint against the City of Campbell (the City) and Mahoning County (the County)[1] alleging that they negligently failed to maintain Hyatt Avenue in a safe condition.
 {¶ 4} Both the City and the County filed motions for summary judgment. They argued that they had no actual or constructive notice of the alleged defective manhole cover and that they did not negligently maintain Hyatt Avenue.
 {¶ 5} A magistrate considered the summary judgment motions and entered a decision granting them both. The magistrate concluded that there was no evidence that either the City or the County had actual or constructive notice of the alleged condition of the manhole cover. Thus, he determined that they owed no duty to appellant. Because the magistrate determined that no genuine issue of material fact existed on this issue, he issued a decision granting summary judgment to both appellees.
 {¶ 6} Appellant filed objections to the magistrate's decision basically objecting to all of the magistrate's findings of fact and conclusions of law. The trial court overruled the objections, adopted the magistrate's decision, and entered judgment accordingly.
 {¶ 7} Appellant filed a timely notice of appeal on March 7, 2007. *Page 2 
 {¶ 8} Appellant raises two assignments of error, both of which are governed by the summary judgment standard of review.
 {¶ 9} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. Am. Industries ResourcesCorp. (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v.Flemming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated.Hoyt, Inc. v. Gordon Assoc, Inc. (1995), 104 Ohio App.3d 598, 603,662 N.E.2d 1088, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202.
 {¶ 10} It is with this standard in mind that we consider appellant's assignments of error, the first of which states:
 {¶ 11} "THE TRIAL COURT ERRED WHEN IT HELD THAT A REASONABLE TRIER OF FACT COULD NOT FIND THAT APPELLEES HAD CONSTRUCTIVE NOTICE OF THE DEFECTIVE MANHOLE THAT CAUSED APPELLANT'S INJURIES."
 {¶ 12} Appellant argues that appellees had a duty to keep the manhole free from nuisance. He claims that appellees maintained the manhole and the road it is located on in a negligent manner.
 {¶ 13} Appellant states that maintenance crews were repairing the streets and cleaning the sewer system around the same time as his accident. Thus, he concludes that appellees would have had constructive notice of the manhole cover's defective condition. He contends that the improperly placed manhole cover could have been easily discovered by the exercise of ordinary care while cleaning the street and sewer system. *Page 3 
 {¶ 14} Appellant further contends that appellees had time to discover the defect because they had done work on Hyatt Avenue within a relatively short time of his accident. He argues that appellees failed to adequately replace the manhole cover. Therefore, appellant asserts that appellees failed to use ordinary care in maintaining the manhole cover.
 {¶ 15} The Political Subdivision Tort Liability Act, found in R.C. Chapter 2744, requires courts to engage in a three-tiered analysis to determine whether a political subdivision should be allocated immunity from civil liability. Hubbard v. Canton Bd. of Edn., 97 Ohio St.3d 451,2002-Ohio-6718, 780 N.E.2d 543, at ¶ 10, citing Cater v. Cleveland
(1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.
 {¶ 16} The first tier is simply a statement of the general rule that political subdivisions are immune from tort liability. Cater,83 Ohio St.3d at 28. Specifically, R.C. 2744.02(A)(1)[2] provides in pertinent part:
 {¶ 17} "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 18} Under the second tier, immunity can be removed under any one of five exceptions to immunity. The immunity afforded to political subdivisions under R.C. 2744.02(A)(1), by its express terms, is subject to the five exceptions listed in R.C. 2744.02(B). Cater,83 Ohio St.3d at 28.
 {¶ 19} Under the third tier, immunity can be reinstated if the political subdivision can successfully argue an available defense. The exceptions set forth in R.C. 2744.02(B), by their express terms, are subject to the defenses listed in R.C. 2744.03.
 {¶ 20} Thus, in this case, we must begin under the first tier, with the view that both the County and the City have immunity. *Page 4 
 {¶ 21} We must then move to the second tier to determine whether any of the R.C. 2744.02(B) exceptions apply in this case. There are two exceptions that may apply. The first exception is set out in R.C.2744.02(B)(2):
 {¶ 22} "(2) Except as otherwise provided * * *, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."
 {¶ 23} Appellant argues in part that appellees negligently maintained the sewer system. Thus, we must determine whether the maintenance of a sewer system is a proprietary function as opposed to a governmental function.
 {¶ 24} R.C. 2744.01(G)(2)(d) includes as a proprietary function, "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(C)(2)(l) lists as a governmental function "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including * * * a sewer system."
 {¶ 25} This case does not involve the provision, planning, design, construction, or reconstruction of a sewer system. Thus, we are not dealing with a governmental function.
 {¶ 26} The magistrate found that this case did not involve a proprietary function. He reasoned that the term "maintain" means "[t]o preserve or keep in a given existing condition, as of efficiency or good repair." Quoting Webster's New College Dictionary (1999) 660. He pointed out that no evidence was presented as to how the manhole cover was defective, or if it was defective at all. And he noted that there was no evidence that the cover became dislodged because it was in a state of disrepair. Furthermore, he pointed to the fact that appellant stated the cover was replaced and seated after his accident without modifying the cover or the manhole. Importantly, the magistrate pointed to appellant's deposition testimony that he did not notice any defects with the manhole cover just an hour before his accident when he traveled on Hyatt Avenue. Thus, he concluded that there was no evidence that the *Page 5 
manhole cover was improperly maintained. Because the magistrate concluded that the manhole cover was not improperly maintained, he reasoned that this case did not involve the maintenance of a sewer system. For this reason, the magistrate determined that this case did not involve a proprietary function and the exception to immunity listed in R.C. 2744.02(B)(2) did not apply.
 {¶ 27} We do not entirely agree with the magistrate's reasoning. This case does involve the maintenance of a sewer system. Appellant specifically alleged that appellees were negligent in maintaining the sewer system. The fact that no evidence exists that appellees actually did anything to the sewer or the manhole cover on Hyatt Avenue does not remove the maintenance of the sewer system from the list of proprietary functions. Instead, another reason exists that the R.C. 2744.02(B)(2) exception does not apply. The exception specifically states that political subdivisions are liable for the "negligent performance of acts by their employees" in performing a proprietary function. No evidence exists that any City or County employee was working on the manhole, removed the manhole cover, or replaced the manhole cover on Hyatt Avenue. Appellant points to the City's admissions that City workers were cleaning storm sewers, repairing potholes, and sweeping streets in Campbell around the time of his accident. But there is no evidence that this work was being conducted on Hyatt Avenue or had recently been conducted on Hyatt Avenue. Furthermore, the City admitted that it was cleaning storm sewers, not sanitary sewers, which is the type of sewer at issue here. Hence, because there is no evidence that any City or County employee had performed any maintenance work on or around the manhole cover on Hyatt Avenue, the proprietary function exception does not apply in this case.
 {¶ 28} The second exception that may potentially apply here is stated in R.C. 2744.02(B)(3):
 {¶ 29} "(3) Except as otherwise provided * * *, political subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, *Page 6 
or public grounds within the political subdivisions open, in repair, and free from nuisance, * * * ."[3]
 {¶ 30} Thus, political subdivisions must keep their streets open and free from nuisance.
 {¶ 31} In order to be subject to liability under this section, the political subdivision must have either actual or constructive notice of a nuisance. Klosterman v. Medina, 9th Dist. No. 04CA0052-M,2005-Ohio-1134, at ¶ 9, citing Vogel v. Wells (1991), 57 Ohio St.3d 91,97, 566 N.E.2d 154. There is no evidence in this case that either the County or the City had actual notice of the condition of the manhole cover. Therefore, we must examine whether constructive notice existed. "In order to charge a municipality with constructive notice of a nuisance, `it must appear that such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger or an invasion of private rights.'" Tyler v.Cleveland (1998), 129 Ohio App.3d 441, 445, 717 N.E.2d 1175, citingBeebe v. Toledo (1958), 168 Ohio St. 203, 151 N.E.2d 738, paragraph two of the syllabus.
 {¶ 32} Appellant argues that appellees negligently failed to maintain Hyatt Avenue in a safe condition and free from nuisance. Although appellant does not treat the County and the City separately here, we must address his arguments independently as they pertain to each individual appellee.
 {¶ 33} The County first argues that Hyatt Avenue is not a county highway. Second, it asserts that it cannot be held responsible for any acts which the City conducted, such as the cleaning of the sewers and/or roads in the area of Hyatt Avenue. Third, the County asserts that appellant could point to no evidence that it had any notice, actual or constructive, of the manhole's condition.
 {¶ 34} Appellant argues that maintenance crews were repairing the streets and cleaning the sewer system around the same time as his accident, which put *Page 7 
appellees on constructive notice of the condition of the manhole cover. For support, appellant points to the City's answers to supplemental interrogatories. However, the City's interrogatory answers reveal that the City cleans and repairs the roads in Campbell. In its answers, the City stated that it conducts yearly repairs and cleaning of City roads and yearly cleaning of storm sewers. (City's supplemental answers to interrogatories nos. 4, 9, 16). It makes no mention of the County being involved in these repairs or cleaning efforts.
 {¶ 35} Furthermore, the uncontroverted evidence establishes that the County does not maintain Hyatt Avenue. In their affidavits, Joseph DeSantis, a field supervisor for the County Sanitary Engineer's Office, and Guy Maiorana, the small plants manager for the County Sanitary Engineer's Office, attested that Hyatt Avenue is not maintained by the County Sanitary Engineer's Office. (DeSantis aff. ¶ 5; Maiorana aff. ¶ 8). Additionally, Marilyn Kenner, the County's chief deputy engineer, stated that Hyatt Avenue is not owned, operated, maintained, or repaired by the County. (Kenner aff. ¶ 4). Appellant did not present any evidence to rebut these statements.
 {¶ 36} Thus, appellant's argument that the County negligently maintained Hyatt Avenue is unsubstantiated. Furthermore, since the County was not a party to the cleaning/repair work, this work conducted by City employees could not have given the County constructive notice of the condition of the manhole cover.
 {¶ 37} Furthermore, as will be seen below, the alleged defective condition did not exist for a long enough period of time to establish that either the County or the City could have had constructive notice of it.
 {¶ 38} The City argues that appellant failed to present any evidence that it had actual or constructive notice of the condition of the manhole cover. It asserts that it was cleaning the storm sewers in Campbell in the spring of 2000, not the sanitary sewers. The City claims the manhole cover in question is part of the sanitary sewer system. The City states that the two sewer systems are completely separate from each other. Therefore, the City claims it did not have notice of the condition of the *Page 8 
manhole cover.
 {¶ 39} The City did not admit, as appellant alleges, that it was working on Hyatt Avenue around the time of appellant's accident. The City stated that it had no idea which streets it was working on during the week preceding appellant's accident. (City's supplemental answers to interrogatories no. 9). The City also stated that every year during and after winter it "repairs potholes, do[es] street sweeping and storm sewer cleaning." (City's supplemental answers to interrogatories no. 16). One cannot conclude from these answers, as appellant does, that the City was working on Hyatt Avenue at the time of appellant's accident.
 {¶ 40} Furthermore, appellant's own testimony demonstrates that the alleged defective condition likely did not exist less than an hour before his accident. Appellant stated that he drove up and down Hyatt Avenue Monday through Friday every week to take his children to their babysitter's house. (Thompson dep. 29). In the week leading up to appellant's accident, which occurred on a Friday, appellant drove up and down Hyatt Avenue each week day. (Thompson dep. 163). On the morning of the accident, appellant drove up Hyatt Avenue and dropped off his children at their babysitter's house. (Thompson dep. 167). Appellant stayed at the babysitter's house for approximately 30 to 40 minutes. (Thompson dep. 168-69). Appellant then drove down Hyatt Avenue and ran over the manhole cover. Appellant's testimony then revealed the following:
 {¶ 41} "Q. Would I be correct in saying that as you drove to Jeanie Cappelli's house that morning of March 3, 2000, you did not notice anything unusual about any of the manhole covers on Hyatt Street; is that correct?
 {¶ 42} "A. I didn't notice anything unusual.
 {¶ 43} "Q. All right. And the day before, March 2 — Thursday March 2, 2000, you had driven by that same location where your accident occurred going to Jeanie Cappelli's and coming home; is that correct?
 {¶ 44} "A. Yes.
 {¶ 45} "Q. And would I be correct in saying you didn't notice anything unusual *Page 9 
about any of the manhole covers on Hyatt Street that day, did you?
 {¶ 46} "A. No, I didn't notice anything unusual, no.
 {¶ 47} "Q. Okay. In fact, at no time on any of the days that you drove to Jeanie Cappelli's house on Hyatt Street prior to March 3, 2000, did you see anything unusual or out of the ordinary about any of the manhole covers on Hyatt Street; is that correct?
 {¶ 48} "A. Yes, I didn't see nothing unusual." (Thompson dep. 171-72).
 {¶ 49} Appellant also stated that on the day in question, it was light and sunny out. (Thompson dep. 30). Therefore, his vision of the road was not compromised.
 {¶ 50} If appellant passed over the subject manhole cover less than an hour before his accident and did not notice any type of defect, it is hard to imagine how the City could have obtained constructive notice of the manhole's alleged defective condition before appellant's accident. "A plaintiff cannot prove constructive notice of a hazard without a factual basis that the hazard existed for a sufficient time to enable the exercise of ordinary care." Sharp v. Andersons, Inc., 10th Dist. No. 06AP-81, 2006-Ohio-4075, at ¶ 12. A plaintiff must present evidence as to the length of time the hazard had existed in order to support an inference that the defendant had constructive notice. Presley v. City ofNorwood (1973), 36 Ohio St.2d 29, 32, 303 N.E.2d 81.
 {¶ 51} Appellant did not present any evidence as to the length of time the alleged defect existed with the manhole cover. The only evidence as to the condition of Hyatt Avenue and the manhole cover prior to appellant's accident came from appellant himself. According to appellant, he did not notice any type of defect in the days preceding his accident when he traveled up and down Hyatt Avenue. Nor did he notice any type of defect less than an hour before his accident. Consequently, no genuine issue of fact exists. The City did not have sufficient time to acquire constructive notice of the alleged defect with the manhole cover. Without actual or constructive notice of the alleged defective condition, the City cannot be held liable for appellant's accident. *Page 10 
 {¶ 52} Accordingly, appellant's first assignment of error is without merit.
 {¶ 53} Appellant's second assignment of error states:
 {¶ 54} "THE TRIAL COURT ERRED WHEN IT HELD THAT A REASONABLE TRIER OF FACT COULD NOT FIND THAT APPELLEES NEGLIGENTLY MAINTAINED A PUBLIC ROAD OR SEWER SYSTEM."
 {¶ 55} Here appellant argues that even if appellees did not have constructive notice of the manhole cover's condition, he should still prevail because appellees failed to properly perform the proprietary or governmental function of adequately maintaining the roadway and sewer system. He contends the evidence that appellees were repairing the streets and cleaning the sewer system in the area could lead a reasonable trier of fact to conclude that appellees negligently replaced the manhole cover. In this case, appellant argues, he would not have to demonstrate that appellees had notice of the condition because appellees created the dangerous condition.
 {¶ 56} Appellant contends that appellees were repairing the streets and cleaning the sewer system in the area and this could lead a reasonable trier of fact to conclude that appellees negligently replaced the manhole cover. However, there are several problems with this argument. First, as discussed above, the County had nothing to do with cleaning the streets or the sewers. Second, while generally the City was cleaning the sewers, it was cleaning storm sewers, not sanitary sewers. Third, appellant can point to no evidence that the City was cleaning or had recently cleaned the street or the sewers on Hyatt Avenue.
 {¶ 57} Furthermore, although appellant alleges that both the County and the City negligently maintained the road and/or sewer system, his deposition testimony reveals otherwise:
 {¶ 58} "Q. Okay. In all the time you had traveled prior to the accident, had you seen any misaligned manhole covers traveling to and from the babysitter from your house on Chestnut to Hyatt Street?
 {¶ 59} "A. No. *Page 11 
 {¶ 60} "Q. Had you noted any defects in the manhole covers, had you observed any accidents, had you observed any open manhole covers?
 {¶ 61} "A. No, Sir.
 {¶ 62} "Q. In a general sense of things, was the road or the manholes in a state liable to cause you injury from your observations?
 {¶ 63} "A. I don't understand your question.
 {¶ 64} "Q. Your general sense impression, when you drove down the roadway, were you fearful of the manholes?
 {¶ 65} "A. No.
 {¶ 66} "Q. Were you afraid that they were going to come off and cause you an accident?
 {¶ 67} "A. No.
 {¶ 68} "Q. Did you see anything that would have caused you to believe that they were going to come off and cause an accident?
 {¶ 69} "A. No. People hit them every day.
 {¶ 70} "Q. And you never saw one fly off?
 {¶ 71} "A. Never seen one fly off. That's the first I've ever seen it.
 {¶ 72} "Q. Did you ever see any manholes come off in that area other than this manhole?
 {¶ 73} "A. Never seen nothing." (Thompson dep. 191-92).
 {¶ 74} In addition, as discussed above, appellant traveled up and down Hyatt Avenue five days a week. Appellant stated that he did not notice anything unusual about the manhole covers on Hyatt Avenue during the days and weeks preceding his accident. (Thompson dep. 171-72).
 {¶ 75} Furthermore, appellant stated that he had no evidence that the County failed to keep Hyatt Avenue safe or that Hyatt Avenue was in a defective state:
 {¶ 76} "Q. Do you have any evidence that Mahoning County failed to keep the street reasonably safe for travel?
 {¶ 77} "A. No. *Page 12 
 {¶ 78} "Q. Do you have any evidence that there was a defective condition in the roadway prior to the accident?
 {¶ 79} "A. No.
 {¶ 80} "Q. Do you have any evidence that demonstrates that the Defendant Mahoning County failed to exercise due care in maintaining the subject roadway where the accident occurred?
 {¶ 81} "A. No." (Thompson dep. 151).
 {¶ 82} Appellant was in the best position to notice any problems with the manhole covers on Hyatt Avenue or the roadway itself since he traveled up and down Hyatt on a daily basis. And according to him, the manholes and roadway did not seem to be in a state of disrepair or danger. No other evidence exists that tends to suggest otherwise. Thus, no material question of fact exists that would lead a reasonable trier of fact to conclude that either the County or the City maintained Hyatt Avenue negligently.
 {¶ 83} Accordingly, appellant's second assignment of error is without merit.
 {¶ 84} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
DeGenaro, P.J., concurs.
[1] Although not specifically named in the complaint in relation to the County, appellant's suit targets the County Sanitary Engineer's Office.
[2] The version of the immunity statute that is applicable is the law that was in effect at the time the alleged tortious acts occurred.Hubbard, 97 Ohio St.3d at ¶ 17.
[3] This is the version of R.C.2744.02(B)(3) that was in effect in 2000. *Page 1