OPINION *Page 2 
{¶ 1} The defendant-appellant, the City of Napoleon, appeals the judgment of the Henry County Common Pleas Court denying its motion for summary judgment. On appeal, the City contends summary judgment in its favor is appropriate because it is entitled to sovereign immunity. For the reasons set forth herein, we reverse the judgment of the trial court.
 {¶ 2} In 1993, the plaintiffs-appellees, David Ward and Valerie Ward, purchased residential property along the southern side of Huddle Road in Napoleon Township, Ohio. One to two years earlier, the City had designed and constructed a new sanitary sewer along the southern side of Huddle Road, even though the pipe was located outside the city limits. The pipe installed by the City contained Y-shaped connectors so residents could tap into the sanitary sewer without having to dismantle the main line. The construction of the new sanitary sewer allowed an existing pipe, which had been used as both a storm sewer and an overflow sanitary sewer, to be used solely as a storm sewer. As part of the separated storm sewer, the City constructed a new catch basin in the front of the property the Wards later purchased. The pipe that drained into the catch basin from the east was the original combination storm and overflow sanitary sewer *Page 3 
pipe. The outflow pipe was newly constructed, and it flowed beneath Huddle Road to join the City's storm sewer on the northern side of the street.
 {¶ 3} At the time of purchase, the Wards' home was serviced by a septic tank. The Wards eventually sought to replace the septic tank with a larger one, but the Health Department denied a permit since a sanitary sewer system was located within 200 feet of their home. Unable to annex their property to the City, the Wards paid a connection fee of $600 to the City and tapped into the sanitary sewer system. At the time of the connection, the Wards also excavated around their home and installed a new clean water drainage system, which included a sump pump on the exterior of their home. All of the clean water was routed from around the Wards' house into the storm sewer catch basin at the front of their property.
 {¶ 4} In August 1998, the region experienced a significant rain event. Shortly thereafter, the Wards noticed that raw sewage had caused damage to their property. The Wards called the City, believing that the raw sewage had backed up either through the sanitary sewer or the storm sewer. Upon investigation, raw sewage was found in the exterior sump pump, and feces and toilet paper were found in the catch basin at the front of their property. City employees flushed a large amount of bleach through the Wards' drainage system to eliminate the odor of raw sewage, which David claims ruined three of his sump pumps. *Page 4 
 {¶ 5} In 2000, the Wards filed a complaint against the City in Henry County Common Pleas Court case number 00-CV-081. The complaint was voluntarily dismissed, and the Wards refiled the case on March 27, 2006 in Henry County Common Pleas Court case number 06-CV-048, which is before us on appeal. In their complaint, the Wards asserted that the "sewer system," was owned by the City, and that the City had negligently operated, installed, serviced, maintained, and/or controlled the sewer system. The Wards sought compensatory damages for their property damage and for physical injury suffered by Valerie. The complaint also alleged one count of loss of consortium.
 {¶ 6} The trial court ordered that the discovery from 00-CV-081 be incorporated into 06-CV-048, and on February 6, 2007, the City filed a motion requesting summary judgment based on sovereign immunity. On April 4, 2007, the Wards filed a response, and the City filed its reply on April 30, 2007. On May 17, 2007, the Wards filed a motion for leave to file an amended complaint, which the trial court granted. The amended complaint simply clarified the term "sewer system" to include both the storm sewer and the sanitary sewer. The City filed supplemental authority to their motion for summary judgment and also filed an answer to the Wards' amended complaint. On October 3, 2007, the trial court found genuine issues of material fact and denied the City's motion for summary *Page 5 
judgment. The City appeals the trial court's decision, raising one assignment of error for our review.
 Assignment of Error The trial court erred when it denied immunity to Appellant againstAppellee's claims.
 {¶ 7} Appellate jurisdiction is limited to review of lower courts' final judgments. Section 3(B)(2), Article IV, Ohio Constitution. To be a final, appealable order, a judgment entry must meet the requirements of R.C. 2505.02 and, if applicable, Civ. R. 54(B). Chef Italiano Corp. v.Kent State Univ. (1989), 44 Ohio St.3d 86, 88, 541 N.E.2d 64. Generally, a denial of summary judgment is not a final, appealable order.Celebrezze v. Netzley (1990), 51 Ohio St.3d 89, 90, 554 N.E.2d 1292. However, R.C. 2744.02(C) provides for appellate jurisdiction when a trial court denies sovereign immunity. The Supreme Court has evaluated R.C. 2744.02(C) and determined that a court of appeals must conduct a de novo review even if the trial court's denial of summary judgment was based on genuine issues of material fact. Xenia v. Hubbell,115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, at ¶ 21. Therefore, we have jurisdiction to determine this appeal.
 {¶ 8} An appellate court reviews a trial court's summary judgment decision de novo, independently and without deference to the trial court's decision. Ohio Govt. Risk Mgt. Plan v. Harrison,115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶ 5, citing Comer v.Risko, 106 Ohio St. 3d 185, 2005-Ohio-4559, *Page 6 833 N.E.2d 712, at ¶ 8. Summary judgment is appropriate only "when the requirements of Civ. R. 56(C) are met." Adkins v. Chief Supermarket, 3d Dist. No. 11-06-07, 2007-Ohio-772, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ. R. 56(C); Horton v. Harwick Chem. Corp.,73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, at paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *." Id., at ¶ 8, citing Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7,663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant. Jacobs, at 7.
 {¶ 9} The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St .3d 112, 116,526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ. R. 56(C). Id., at 115, citing Harless *Page 7 v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46, citing Hamlin v. McAlpin Co. (1964), 175 Ohio St. 517, 519-520,196 N.E.2d 781; Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107,662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *." Dresher, at 294.
 {¶ 10} The first argument asserted by the City in its motion for summary judgment was that it was entitled to summary judgment based on the clear language of R.C. 2744.02(A)(1), which provides immunity when a political subdivision performs a governmental function or proprietary function. The City argued that the activities alleged in the Wards' complaint fall squarely within the definitions of "governmental function" and "proprietary function," and it was therefore immune. In response, the Wards argued that under R.C. 2744.02(B), political subdivisions are liable for their employees' negligence in the performance of a proprietary function, which includes the maintenance and operation of a sewer system.
 {¶ 11} "`Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. * * * The first tier is the general rule that a political subdivision is immune from liability *Page 8 
incurred in performing either a governmental function or proprietary function.'" Cramer v. Auglaize Acres, 113 Ohio St.3d 266,2007-Ohio-1946, 865 N.E.2d 9, at ¶ 14, quoting Colbert v.Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, citing R.C. 2744.02(A)(1); Greene Cty. Agricultural Soc. v. Liming (2000),89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141.[1] R.C. 2744.01(C)(2)(l) defines "governmental function" as "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system." A "proprietary function" includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d).
 {¶ 12} The parties do not dispute that the City is a "political subdivision" as defined in R.C. 2744.01. In its answers to the Wards' interrogatories, the City admitted that it designed and constructed the "Huddle Road Sanitary Sewer system," which, as stated above, was defined as both the sanitary sewer and the storm sewer. (Def's Mot. for Summ. J., Feb. 6, 2007, at Ex. K). Attached to the Wards' response to the City's motion for summary judgment was David Ward's affidavit, in which he stated that the City surmised his damages were caused by its failure to put in a back flow valve, or a check valve, at the catch basin. (Pl.'s *Page 9 
Response to Summ. J. Mot., Apr. 4, 2007, at Ex. 1, ¶ 6). Even if the City were negligent in failing to install a check valve at the catch basin, such error would have been in the design and/or construction of the catch basin. As stated above, the design and construction of a sewer system is a governmental function, and a political subdivision is immune from liability, even where it may have been negligent. Accordingly, the City is entitled to immunity as to the design and/or construction of both the sanitary sewer and the storm sewer.
 {¶ 13} Sovereign immunity is not absolute, and R.C. 2744.02(B) sets forth five exceptions, which subject the political subdivision to liability. Cramer, at ¶ 13-15, quoting Colbert, at ¶ 7-9, citingCater v. Cleveland (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. Evaluating whether any of the five exceptions apply is the second-tier of the test for sovereign immunity. In this case, the only applicable exception is R.C. 2744.02(B)(2), which states: "* * * political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."
 {¶ 14} In its motion for summary judgment, the City argued that its employees were not negligent in maintaining or operating the sewer system. The City raised several arguments to support its broad proposition. First, the City claimed that the Wards failed to prove any defect in the new sanitary sewer pipe. *Page 10 
The City is correct that the record contains no evidence showing a failure of the sanitary sewer. The former City Engineer, Adam Hoff, testified that the City inspected the sanitary sewer when trying to find the cause of the Wards' damages, and there was nothing to indicate that the sanitary sewer failed. The Wards produced no factual evidence to dispute this argument. Therefore, the City is entitled to sovereign immunity as to its maintenance and/or operation of the sanitary sewer because the Wards cannot prove that the City's employees were negligent.
 {¶ 15} Second, the City argued it did not own the storm sewer so it could not be liable for damages if they were caused by other residents connecting their raw sewage into the storm sewer, which was connected to the catch basin. The City alleged that the storm sewer was owned by Henry County, and it had no control over the storm sewer. The City is correct in its assertion that no evidence has been presented to prove that the City had any control over the storm sewer pipe which connected houses to the east of the Wards into the catch basin. Although there is evidence that the City constructed the catch basin on the Wards' property, there is nothing in the record to prove that the City did any work at any time on the existing pipe other than connect it into the catch basin. See Thompson v. Campbell, 7th Dist. No. 07-Ma-54, 2008-Ohio-1545, at ¶ 27 (requiring an act by the political subdivision's employees to apply the exceptions to immunity). As in *Page 11 Thompson, there has been no evidence produced in this case that City employees did any work at any time on the storm sewer to the east of the Wards' property.
 {¶ 16} Furthermore, regardless of whether the City had control over the storm sewer, it had no responsibility to require the residents to the east of the Wards' property to connect to the new sanitary sewer. At the time of the Wards' damages, several homes to the east of the Wards' property were not connected to the City's sanitary sewer. Instead, those homes were either serviced by septic tanks, and presumably leech fields, and/or they were connected into the old combination sewer pipe, which was not replaced during construction of the new sanitary sewer and which emptied into the catch basin. The evidence is undisputed that the homes to the south of Huddle Road were outside the City's limits. There is also no dispute that those properties had not been annexed to the City. Although the Wards produced the sewer agreements entered into between the City and Henry County in 1983 and 1997, neither contract places the burden of requiring residents to connect to the sanitary sewer on the City. As such, the health district was the appropriate entity to require sewer connection. See generally Clark v. Greene County Combined HealthDist., 108 Ohio St.3d 427, 2006-Ohio-1326, 844 N.E.2d 330. Furthermore, the City produced the affidavit of Chad Lulfs, the current City Engineer, who stated that the City does not own, maintain, or control any storm sewer or any lateral lines along Huddle Road. *Page 12 
(Aff., Lulfs, Chad, Apr. 30, 2007, at ¶ 5). Therefore, even if the other residents were dumping raw sewage into the catch basin through the existing storm sewer pipe, there has been no showing by the plaintiffs that City employees were negligent in that regard.
 {¶ 17} The City also argued it had no responsibility for the Wards' lateral lines, specifically, the lateral line into the catch basin. The Wards had the burden to prove that the City was under a legal duty to maintain and/or operate their lateral sewer line. They have failed to do so. See generally Kaczor v. Bellaire (Jul. 13, 1998), 7th
Dist. No. 96 BA 60, at * 5. The record is clear that the City must issue permits and do inspections when a resident decides to connect to the sanitary sewer. The record is also clear that City employees sometimes inspected storm sewer connections as a courtesy to contractors and residents. (Dep., Damman, Brent, Mar. 17, 2005, at 60).
 {¶ 18} In his deposition, David Ward testified that the "City of Napoleon did all of the inspection, everything had to be done to code, to the City code. They inspected it, drew it out, mapped it, diagramed it, and signed, sealed, and okayed it in 1997." (Dep., Ward, David, Feb. 28, 2005, at 35). In his affidavit, David stated that the City inspected all of his work, including both the storm and sanitary sewer connections. (Pl.'s Response to Summ. J. Mot., at Ex. 1, ¶ 4). However, Ward did not provide any specifics as to what the City maps and diagrams entailed, or the *Page 13 
specifics of what the City's employees "signed and sealed." Brent Damman, a former employee of the City Engineer's office, stated that he advised Ward on the design of his drainage system. (Dep., Damman, at 54-44). However, Damman's testimony was clear that he advised only as to the direction of the pipes; i.e., laying the pipe around the eastern side of the house and then to the south. (Id.). There was no evidence that Damman provided guidance concerning the sump pumps or any other specific details. Adam Hoff, the former City Engineer, testified that the "maps" drawn by his employees were simply done to record the dimensions of the residents' sewer system, any bends in the pipe, the fittings, and the depth of the pipe. (Dep., Hoff, Adam, Mar. 17, 2005, at 32). Hoff stated that such work was completed to assist future residents in locating their sewer lines. (Id.). Therefore, although the deponents' testimony appears to create a genuine issue of material fact, it is actually consistent because the City's witnesses simply explained David's statements. Damman's testimony revealed that he provided some advice on the issue of the lateral lines, and Hoff clarified that any design reduced to writing was for purposes of record keeping and did not affect the design of the lateral line.
 {¶ 19} As far as inspection, Damman testified that the plumbers or contractors hired by Ward made all of the connections to the sewers, and he merely inspected the connections, the fittings, and the types of pipe that were used. *Page 14 
(Dep., Damman, at 26). Damman's inspection was essentially a cursory look to make sure the type of pipe used was appropriate and to make sure the connections would not leak. Hoff testified that his employees would check a catch basin to ensure that a resident's storm sewer line was properly attached. (Dep., Hoff, at 34). However, both Damman and Hoff testified that a check valve was not necessary on the catch basin at the front of the Wards' property because water could not flow backwards through that pipe (apparently due to the grade of the land and/or the angle of the pipe). As stated above, even if a check valve was necessary and the City was negligent for not installing one, it would still be entitled to immunity because the design and construction of a sewer system is a governmental function.
 {¶ 20} Based on the above analysis, it appears the City did not owe any duty to the Wards and therefore, its employees cannot be found negligent. Since the City owed no legal duty to the Wards, the remaining arguments dealing with causation in the City's motion for summary judgment are moot. Accordingly, the City is entitled to summary judgment based upon its sovereign immunity pursuant to R.C. 2744.02(A). The sole assignment of error is sustained. *Page 15 
 {¶ 21} The judgment of the Henry County Common Pleas Court is reversed and this cause is remanded to the trial court for entry of judgment consistent with this opinion.
Judgment reversed and cause remanded.
 SHAW, P.J., and ROGERS, J., concur.
 r
[1] The current version of R.C. 2744.02(A) provides for immunity when one political subdivision performs a governmental or proprietary function on behalf of another political subdivision. However, we must apply the statutory language in effect at the time the alleged negligence occurred, and that version of the statute does not contain a similar provision. Hubbard v. Canton Bd. of Edn., 97 Ohio St.3d 451,2002-Ohio-6718, 780 N.E.2d 543, at ¶ 17. *Page 1