[Cite as *Tangler v. Carrollton*, 2018-Ohio-1343.]

STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER & BRITTANY TANGLER, | ) | |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | CASE NO. 17 CA 0920 |
| V. | ) | |
| | ) | OPINION |
| VILLAGE OF CARROLLTON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas of Carroll County, Ohio Case No. 16-CVH-28518

JUDGMENT:    Reversed. Judgment for Appellant.

APPEARANCES:

For Plaintiffs-Appellees    Attorney J. Lundholm
405 Chauncey Avenue, N.W.
P.O. Box 668
New Philadelphia, Ohio 44663

For Defendant-Appellant    Attorney Kristen Campbell Traub
Bretton Commons, Suite 400
8040 Cleveland Avenue, NW
North Canton, Ohio 44720

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: April 5, 2018

DONOFRIO, J.

{¶1} Defendant-appellant, the Village of Carrollton, appeals the judgment of the Carroll County Court of Common Pleas denying its motion for summary judgment regarding political subdivision immunity.

{¶2} Appellant is a political subdivision as defined under Ohio law. Plaintiffs-appellees, Christopher and Brittany Tangler, reside on Courtview Drive inside appellant's jurisdiction. This action concerns a sewer system that is operated and maintained by appellant which services appellees' residence.

{¶3} The sewer system itself was constructed at some time during the 1950's. The relevant sewer line was constructed with terracotta clay tiles. Appellees purchased their home in appellant's jurisdiction in May of 2014. In October of 2014, appellees experienced a backup with the sewer system. After appellees contacted appellant about the October 2014 backup, appellant had employees inspect appellees' residence and the sewer line itself. After the inspection, appellant's employees were unable to locate any deficiency that caused the backup.

{¶4} In July of 2015, appellees experienced another backup with the sewer system and again contacted appellant. Appellant sent employees to inspect the system and the employees did locate a problem with the sewer system that caused the backup affecting appellees' home. The problem in the sewer system was directly in front of appellees' residence. At that point, appellant performed an excavation and removed the damaged portion of the sewer line and replaced it with PVC pipe.

{¶5} Upon further inspection of a larger portion of the sewer system, appellant concluded the current sewer system was inadequate to service the needs of some of appellant's residents. As a result, appellant put plans in place to replace the entire length of sewer line between the manholes on Courtview Drive and Moody Street.

{¶6} After appellant began to make plans for the sewer replacement, but before the sewer line itself was replaced, appellees experienced a third backup in the sewer system in January of 2016. Appellees then filed a complaint against appellant claiming that appellant was negligent in its maintenance of the sewer system.

Appellees also requested a temporary restraining order to prevent appellant from moving forward with its plans to replace the sewer system arguing that doing so would destroy evidence vital to appellees' action. The trial court granted appellees' motion for a temporary restraining order.

{¶7} After discovery concluded, appellant filed a motion for summary judgment. The crux of appellant's motion for summary judgment was that it, as a political subdivision, enjoyed immunity to which no exception applied which ultimately barred appellees' action. In the alternative, appellant argued that even if an exception to its immunity applied, a statutory defense would also apply and re-establish appellant's immunity. Appellees argued that the backups were due to negligent maintenance of the sewer lines, which is considered a proprietary function. Because maintenance issues are considered propriety functions of political subdivisions, appellees argued that appellant was not entitled to immunity protection.

{¶8} In a judgment entry dated July 12, 2017, the trial court ruled that there were material questions of fact which precluded summary judgment and denied appellant's motion. Pursuant to R.C. 2744.02(C), the trial court held that its ruling on appellant's motion for summary judgment was a final appealable order. Appellant timely filed this appeal on August 11, 2017. Appellant now raises one assignment of error.

{¶9} Appellant's sole assignment of error states:

THE TRIAL [COURT] ERRED IN DENYING SUMMARY JUDGMENT TO APPELLANT VILLAGE OF CARROLLTON BASED ON POLITICAL SUBDIVISION IMMUNITY.

{¶10} Appellant raises numerous issues concerning its sole assignment of error. However, we need only address appellant's first argument that the trial court failed to perform any legal analysis to determine if appellees' claims should have been barred by political subdivision immunity. Appellant urges this Court to perform the political subdivision legal analysis, reverse the trial court's decision, and grant its

motion for summary judgment pursuant to App.R. 12.

{¶11} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the nonmoving party, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law, and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ. R. 56(C); *Byrd v. Smith*, 110 Ohio St. 3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10.

{¶12} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ. R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

{¶13} In *Dresher*, the Ohio Supreme Court held that a party who moves for summary judgment need not support its motion with affidavits provided that the party does not bear the burden of proof on the issues contained in the motion. *Dresher* at 277. Further, there is no requirement in Civ. R. 56 that any party submit affidavits to support a motion for summary judgment. *See, e.g.,* Civ. R. 56(A) and (B). *Id.* However, there is a requirement that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ. R. 56(C). *Id.*

{¶14} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being

litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d, 598, 603, 662 N.E.2d 1088 (8th Dist. 1995), citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶15}** "Whether a political subdivision is entitled to immunity is analyzed using a three-tiered process." *Iannuzzi v. Harris*, 7th Dist. No. 10-MA-117, 2011-Ohio-3185, ¶ 9 citing *Green Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000). First, R.C. 2744.02(A)(1) sets forth the general rule that political subdivisions are not liable in damages. *Id.* Second, the court must determine if any of the exceptions to political subdivision immunity as set forth in R.C. 2744.02(B) apply. *Id.* Third, if the court finds that an exception found in R.C. 2744.02(B) does apply, the court must then consider R.C. 2744.03 which provides defenses and immunities to liability. *Id.*

**{¶16}** The political subdivision immunity is an affirmative defense and the burden of proof is on the political subdivision to establish general immunity. *Slane v. Hillard*, 10th Dist. No. 15AP-493, 2016-Ohio-306, ¶ 30. When the political subdivision establishes general immunity, the burden then shifts to the plaintiff to show that one of the exceptions to immunity applies. *Id.* at ¶ 31.

**{¶17}** Pursuant to the first tier of the analysis, it is uncontested that appellant is a political subdivision pursuant to R.C. 2744.01(F). As such, the burden then shifts to appellees to show that an exception to political subdivision immunity applies.

**{¶18}** Analyzing the second tier, appellees' memorandum in opposition to summary judgment implicitly argues that the applicable exception to appellant's immunity is R.C. 2744.02(B)(2). Pursuant to R.C. 2744.02(B)(2), "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." "* * * [B]efore R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action-duty, breach, proximate cause, and damages; and (2) that the negligence arose out of a 'proprietary function.'" *Pierce v. Gallipolis*, 4th Dist.

No. 14CA3, 2015-Ohio-2995, ¶ 20 citing *Gabel v. Miami E. School Bd.*, 169 Ohio App.3d 609, 2006-Ohio-5963, 864 N.E.2d 102, ¶ 39-40 (2d Dist.).

**{¶19}** Appellees' argue that the backups they experienced with the sewer system were due to appellant's negligent maintenance of the sewer line near their home. Pursuant to R.C. 2744.01(G)(2)(d), the maintenance, destruction, operation, and upkeep of a sewer system are defined as proprietary functions.

**{¶20}** Before liability can attach in a negligent maintenance claim for failure to maintain a sewer system, proof that the political subdivision had either constructive or actual notice of a defect is required. *Yetts v. City of Toronto*, 7th Dist. No. 98-JE-6, 1999 WL 689964 citing *Beebe v. Toledo*, 168 Ohio St. 201, 151 N.E.2d 738 (1958), see also *Thompson v. Campbell*, 7th Dist. No. 07-MA-54, 2008-Ohio-1545, ¶ 3. In this case, it is undisputed that appellees contacted appellant after each backup occurred. Therefore, appellant had proper notice of a defect with the sewer system.

**{¶21}** Addressing the negligence claim, there are two pieces of evidence appellees rely on to show that appellant negligently maintained the sewer line on Courtview Drive. First, appellees rely on the affidavit of their expert, Ron Waid. (Memo in Opp. to Summary Judgment, Exhibit A). In his affidavit, Waid states that he has been employed with a company that is in the business of sewer cleaning and sewer construction since 1981. (Waid Aff. ¶ 3-4). Waid also states that he is state certified in sewer maintenance and installation and takes courses annually to maintain his certification. (Waid Aff. ¶ 5). Finally, Waid states that it is his opinion that the blockages in the sewer line that caused appellees' backups could have been avoided had appellant checked the line with a camera as part of a regular program of preventative maintenance. (Waid Aff. ¶ 17).

**{¶22}** Second, appellees point to portions of the deposition of Roy Ford, appellant's superintendent of waste water. (Ford Dep. 7). Ford testified that part of the normal maintenance program his department performed was to "jet out" various sewer lines throughout the village. (Ford Dep. 40). But Ford did not know how frequently maintenance was performed on the Courtview Drive sewer line. (Ford Dep.

41).

**{¶23}** The evidence relied on by appellees is not sufficient to create a genuine issue of material fact regarding appellant's negligence. Ford's affidavit, which was attached to appellant's motion for summary judgment, states that appellant's waste water department routinely performed inspections and maintenance on the sewer system. (Ford Aff. ¶ 2-6). Such maintenance included jetting approximately 1,500 to 2,500 feet of sewer line each month. (Ford Aff. ¶ 6). Additionally, a lift station, which monitors water flow in the sewer system, was located near appellees' residence and it was also inspected and maintained routinely. (Ford Aff. ¶ 7). The lift station was inspected at least once a week. (Ford Dep. 41).

**{¶24}** Ford's affidavit also states that he inspected the sewer line after appellees' first backup in October of 2014 and found no problems. (Ford Aff. ¶ 10). It was not until appellees' second backup in July of 2015 when a problem with the Courtview Drive sewer line was discovered. (Ford Aff. ¶ 11). Upon the discovery of that problem, appellant performed an excavation of the sewer line, replaced the damaged portion sewer line with PVC pipe, and began implementing plans to replace the entire sewer line on Courtview Drive. (Ford Aff. ¶ 12-17).

**{¶25}** This evidence indicates that appellant never breached any duty it owed to appellees. Appellant put forth evidence that its sewers lines were routinely inspected and maintained. Moreover, this evidence also shows that once appellant discovered the problem with the Courtview Drive sewer line after appellees' second backup, steps were taken to fix the backup problem and to help prevent future backups from occurring.

**{¶26}** Analyzing the evidence relied on by appellees, Ron Waid's opinion that the backups could have been prevented had appellant used a camera to inspect the sewer lines does not negate the fact that appellant routinely inspected and maintained its sewer system. The lack of a camera to inspect the sewer system does not amount to a breach of appellant's duty in this case because the evidence in the record shows that appellant routinely performed maintenance on its sewer system.

Appellant routinely jetted its sewer lines and routinely inspected the Courtview Drive lift station. Appellant's employees also inspected the Courtview Drive sewer line after appellees experienced backups and took steps to replace the sewer line after a problem was identified.

**{¶27}** Similarly, the fact that Ford could not recall how frequently the Courtview Drive sewer line was serviced does not negate the fact that appellant routinely inspected and maintained its sewer lines, including Courtview Drive. With no evidence that appellant breached any duty it owed to appellees, there is no evidence that appellant or its employees were negligent in their maintenance of the Courtview Drive sewer line. As such, no exception to appellant's immunity exists in this case and we need not address the third tier of the political subdivision immunity analysis.

**{¶28}** Even if a genuine issue of material fact existed regarding appellant's negligence, immunity would still apply because the issue with the Courtview Drive sewer line would be considered a governmental function and not proprietary. "R.C. 2744.01(C)(2)(l) identifies as a governmental function 'the provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system,' making these responsibilities immune from political-subdivision liability." *Coleman v. Portage Cty. Engineer*, 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952, ¶ 12.

**{¶29}** Evidence in the record shows that the old design of the sewer system was deficient and needed to be redesigned and replaced. (Ford Aff. ¶ 16-18). Even appellees' expert provided evidence that sewer systems using terracotta clay tiles break "over time" and that the Courtview Drive sewer line was "old and worn out." (Waid Aff. ¶ 13-14). These portions of Waid's affidavit indicate that the sewer's original design and usage of clay tiles had become deficient over time and needed replaced.

**{¶30}** Accordingly, appellant's sole assignment of error has merit and is sustained.

{¶31} For the reasons stated above, the trial court's judgment is hereby reversed and summary judgment is hereby entered in favor of appellant.

Waite, J., concurs.

Robb, P., J., concurs.