[Cite as *McCullough v. Youngstown School Dist.*, 2019-Ohio-3965.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

MAXIMUS MCCULLOUGH et al.,

Plaintiffs-Appellees,

v.

YOUNGSTOWN CITY SCHOOL DISTRICT et al.,

Defendants-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MA 0075**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2015 CV 2000

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Judges and Arlene Singer, Judge of the
Sixth District Court of Appeals, Sitting by Assignment.

---

**JUDGMENT:**
Reversed**.**

---

*Atty. Kevin Lomupo*, Gilardi, Oliver & Lomupo, 223 Fourth Avenue, 10th Floor, Pittsburgh, Pennsylvania 15222 and *Atty. Paul W. Flowers, Atty. Louis E. Grube,* Paul W. Flowers Co., L.P.A**.,** Terminal Tower, Suite 1910, 50 Public Square, Cleveland, Ohio 44113 for Plaintiffs-Appellees and

*Atty. John Rasmussen,* 6060 Rockside Woods Blvd., Suite 131, Independence, Ohio 44131 for Defendants-Appellant.

Dated: September 19, 2019

**Robb, J.**

{¶1} Defendant-Appellant Youngstown City School District ("the District") appeals the decision of the Mahoning County Common Pleas Court denying its motion for summary judgment, thereby denying the District immunity in the lawsuit filed by Plaintiff-Appellee Maximum McCullough, individually and as administrator of the Estate of Faith McCullough et al. ("the Plaintiff"). This case involves the death of a high school student who decided to roll down a hillside at the District's East High School. When the student stood up, she stumbled across the sidewalk and grass strip and fell into a public road and under the back wheels of a passing school bus.

{¶2} As to the Plaintiff's claim concerning the failure to prohibit student access to the school's hillside, we agree with the District's contention that this was a government function and the physical defect exception to immunity did not apply. As to the Plaintiff's other claim for negligent operation of a motor vehicle, we agree with the District's argument that the school bus driver was not negligent as no duty to the student was breached. For the following reasons, the trial court's judgment is reversed, and summary judgment is granted to the District.

<u>STATEMENT OF THE CASE</u>

{¶3} In November 2014, fourteen-year-old Faith McCullough ("the student") and her brother received permission from their parents to start walking home from East High School, the school they attended. They were not bused as they lived nearby. After their mother stopped escorting them, they started taking a shortcut across the football field and down a grass-covered and terraced hill overlooking East High Avenue, a public street. Between the bottom of the hill and the curb of the street was a sidewalk and then a strip of grass.

{¶4} At deposition, the student's brother testified the first time he and his sister rolled down the hill was the day before the accident. He observed other students using the shortcut, but he never observed anyone else rolling down the hill. He said they threw

their belongings to a terraced flat spot between two parts of the hill, rolled to them, and repeated the procedure.  After school the next day (November 12, 2014), her brother said she rolled down the hill in its entirety.  He retrieved her belongings from the first terrace and waited for her at the bottom of the hill.

{¶5}    A school bus driven by an employee of the District had just turned onto the public road from the school's access road after picking up students at East High School.  The driver saw the student rolling down the hill.  The bus stopped because the traffic in front of the bus stopped. When the traffic resumed moving, the bus driver did not immediately proceed forward as she was concerned the student could roll into the street. (Depo. 54, 60).

{¶6}    The student stopped rolling at the bottom of the hill near the interior edge of the sidewalk where her brother was waiting.  As the student stood with her brother's assistance, the driver released the brake and allowed the bus to proceed down the hill.  The student stood facing away from the bus.  As the front camera on the bus approached her position, she can be seen on video stumbling toward the road.  Her brother saw her stumble toward the road and said he could tell from her facial expression that she was dizzy.  The student fell under the rear wheels of the passing bus, suffered a head injury, and died at the scene.

{¶7}    A neighbor ran to the student's house to summon the father who immediately drove to the scene.  The father testified at deposition that his daughter squeezed his hand as she died in the roadway where he found her.  He also testified the football team has used the hill for exercise and the hillside was terraced as a result of prior complaints that the hill was dangerous.

{¶8}    On July 30, 2015, a lawsuit was filed against the District by the father, individually and as the administrator of the student's estate, and by the student's brother.  The complaint encompassed causes of action for wrongful death and survival, alleging the District was negligent (through its agents and employees) by failing to prohibit the student's access to the hillside and negligently driving the bus (listing various alleged failures, including driver training).  The individual plaintiffs sought recovery for negligent infliction of emotional distress based on the brother witnessing the accident and the father

arriving at the scene within minutes.  The bus driver was not named as a defendant.  The District's answer raised various defenses including immunity.

{¶9}  On December 26, 2016, the District filed a motion for summary judgment.  In addition to the depositions of the father and the brother, the depositions of the bus driver and a trooper were filed.  The bus driver received her CDL training and license in 2006 and was a substitute bus driver for the District until obtaining her full-time position in 2012.  She acknowledged children can be unpredictable and impulsive.  She said she was trained to be vigilant for children who could dart into the street; she was to stop and watch if she had concerns and to use the horn if she thought an inattentive child may enter the street.  (Depo. 23-24).  The bus driver explained that on the day before the accident, she was driving past the hill when she noticed the student start to roll down it.  (Depo. 39-41, 50).  According to her deposition testimony, she transmitted a radio announcement about the issue, which she believed would be heard by other bus drivers and the bus garage and would be passed along to (or heard by) the school principal or security.  (Depo. 43-45).

{¶10}  On the day of the accident, the bus driver saw the student rolling down the hill again.  As traffic moved forward, the bus driver waited before releasing the brake to ensure the student would not roll into the street.  (Depo. 53-54, 70).  She saw the student's brother help her up and hold her hand (as depicted in the video).  (Depo. 63, 67).  The bus driver testified she never thought the student would enter the street once she had stopped rolling, reached the sidewalk, and stood up; she believed the student "was safely on the sidewalk."  (Depo. 69-70, 74).

{¶11}  After the bus driver released the brake and the bus proceeded forward, the driver moved somewhat left within her lane for "precautionary reasons."  (Depo. 73-74).  Students on the bus were yelling at the student from the window, and the bus driver told them to stop.  (Depo. 64, 69-70).  As the front of the bus approached the student's position, the video from the front of the bus shows the student stepping backward from the side of the sidewalk near the bottom of the hill into the center of the sidewalk and then into the grass strip bordering the street.  The bus driver testified:  she did not notice the student stumbling toward the grass strip as the bus approached; when she looked in her side mirror after the front of the bus passed the student, she saw the student stumbling

toward the bus; and she then swerved and immediately braked.  (Depo. 64, 69-71, 75, 78-80, 96).

{¶12}  A trooper from the Ohio State Highway Patrol performed a reconstruction. He said the top of the hill was 30 feet above the road with four terraces.  (Depo. 18).  He noted an area on the side of the bus (under the two windows closest to the door) which appeared to be wiped clean of dust suggesting the student may have hit the bus at that location before falling under the rear wheels.  (Depo. 19).  In collecting evidence, he also viewed GPS information and video footage from the bus.  The speed limit was 20 mph due to the active school zone.

{¶13}  The trooper confirmed the bus was at a complete stop before the accident and its speed had increased to 11 mph by the time of the accident.  (Depo. 25, 37-38). The speed further increased after the accident, some of which was attributable to the wheels being turned, which skews the speed measurement.  (Depo. 25-26).  The final resting place of the bus was 65 feet from where the student's body came to rest, with an estimated 11 feet between the final resting place of the body and the place where it was believed she was struck by the wheels.  (Depo 17, 51).  The trooper opined the bus would have traveled approximately 25 feet from the point of collision when the standard perception-to-reaction time would have elapsed.  (Depo. 41-42).  He explained how the air brakes on a bus would result in additional lag time between pressing the brakes and the achievement of a complete stop.  (Depo. 42).

{¶14}  The District also submitted the affidavit of an accident reconstruction engineer who reviewed the depositions, reports, and videos.  He concurred in the conclusion that the bus was moving at approximately 11 mph when the accident occurred. He opined the bus driver did not have the opportunity to avoid the accident after becoming aware the student entered the road and said the student's sudden fall into the path of the rear wheels was the sole cause of the accident.

{¶15}  The Plaintiff's opposition to summary judgment relied on the aforementioned depositions plus the affidavit of an accident reconstruction engineer, who confirmed the speed of 11 mph when the tires contacted the student.  This expert also stated:  when the bus started forward from its stop, the front of the bus was 40 feet from the student who was rising to her feet; the time to rise and stumble before impact was

more than four seconds; and the student's stumbling would have been in the driver's forward field of vision. This expert said an alert driver could have perceived the stumbling and reacted earlier, which could have stopped the bus before the rear wheels reached the point of impact.

{¶16} The District's motion for summary judgment argued it was immune from the Plaintiff's claim alleging negligence in failing to prohibit access to the hillside ("the hillside claim"). The District argued this act or omission was connected to a governmental function involving the provision of a public education system. The District then urged the exception to immunity involving grounds of buildings used in connection with a governmental function was inapplicable as there was no physical defect on the grounds as required by R.C. 2744.02(B)(4).

{¶17} On the claim for negligent operation of a motor vehicle by an employee in the scope of employment and authority, which is another exception to immunity, the District's summary judgment motion argued the bus driver was not negligent. It was urged: there was no breach of a duty of care by starting from a stopped position after the student discontinued the rolling behavior; the driver was proceeding lawfully and had the right-of-way under R.C. 4511.01(UU)(1); the student was negligent by violating various statutes on entering the roadway; and the driver could not have reasonably anticipated a pedestrian would dart into the road. Alternatively, as to the father's negligent infliction of emotional distress claim, the District urged a lack of foreseeability as the father was not a bystander.

{¶18} The Plaintiff's opposition memorandum argued there was negligence in the operation of the bus as the driver proceeded unlawfully by starting to move after the student stopped rolling. A statute was cited providing a person shall not start a vehicle that is stopped, standing, or parked until movement can be made with reasonable safety. Alternatively, the Plaintiff claimed the driver breached the duty to use ordinary care in the face of a perilous situation and/or breached the higher standard of care to be watchful of child-pedestrians. Regarding the father's negligent infliction of emotional distress claim, the Plaintiff emphasized the father's arrival at the scene within minutes of the accident while his daughter was still in the road.

{¶19} As to the hillside claim, the Plaintiff's memorandum opposing summary judgment admitted this claim involved a governmental function. The Plaintiff argued the immunity exception in R.C. 2744.02(B)(4) applied to this claim as: the lack of adequate safety precautions can be a physical defect; the District failed to take measures to prevent access after being warned a student was seen rolling toward an unprotected road; and it was negligent to allow students to roll down a steep hill toward traffic. It was pointed out the District's motion did not assert a third tier defense or immunity.

{¶20} In reply, the District urged the hillside was not hidden or defective, noting the alleged physical defect revolved around dangerous activity by the student. The reply added new arguments: the injury occurred on a roadway rather than on school grounds as required by the physical defect exception to immunity; the exception only deals with maintenance which was not involved here; and even if the exception applied, the District would regain immunity in the third tier of the analysis under R.C. 2744.03(A)(5) as the Plaintiff presented no evidence of malicious purpose, bad faith, wantonness, or recklessness (but the District did not actually allege the injury resulted from the exercise of judgment or discretion in determining whether to acquire equipment, materials, etc.).

{¶21} As to the negligent operation of a vehicle claim, the District's reply argued there was no duty to search for dangers which may encroach on the right-of-way. It was noted that the cases acknowledging a heightened duty of care for young children do not find negligence if the child darted into the driver's path and rendered it impossible to avoid a collision. The District also clarified that its request for summary judgment was not based on the student's contributory negligence.

{¶22} On June 12, 2018, the trial court denied the District's motion for summary judgment. The court analyzed political subdivision immunity. As to the negligent operation of a motor vehicle claim, the court recited the facts and found there was a genuine issue of material fact as to whether the driver was negligent by moving forward after gaining knowledge of the dangerous activity of rolling down a hill toward a road, noting the video showed stumbling after the student stood. Although the trial court did not specifically refer to the hillside claim, the District's motion for summary judgment sought immunity on this claim by arguing the physical defect exception to immunity was inapplicable and the trial court denied the District's entire motion for summary judgment

thereby rejecting all requests for summary judgment therein. It appears the court's rejection of the District's hillside immunity argument was based on its application of another exception to immunity as the trial court quoted the exception in R.C. 2744.02(B)(2): "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶23} The District filed a timely notice of appeal. The District sets forth one assignment of error containing subparts encompassing the various arguments raised on appeal. Referring to all claims, the District broadly asserts: "Because the Defendant Youngstown City School District is entitled to statutory immunity with regard to the Plaintiffs' claims, the lower court erred by failing to grant Defendant's Motion for Summary Judgment."

Immunity

{¶24} The denial of summary judgment is generally not a final, appealable order, and a court of appeals has no jurisdiction over non-final orders. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. However, in an immunity case, there is the following statutory exception to this rule: "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." R.C. 2744.02(C). This includes the right to file an interlocutory appeal from a trial court's decision finding a genuine issue of material fact on an immunity element and thus denying a political subdivision's Civ.R. 56(C) motion for summary judgment seeking immunity. *Hubbell*, 115 Ohio St.3d 77 at ¶ 12, 20-21, 27 (emphasizing the statute's use of the words "benefit" and "alleged"). In such appeal, the appellate court conducts a de novo review to determine if judgment should be entered for the political subdivision as a matter of law or if there remains a genuine issue of material fact requiring "further development of the facts necessary to resolve the immunity issue." *Id.* at ¶ 21.

{¶25} We therefore review an interlocutory decision on whether there was a genuine issue of material fact on the political subdivision's negligence when the pertinent exception to immunity so requires. *See, e.g., Davis v. Brown Local School Dist.*, 7th Dist. Columbiana No. 17 CO 0026, 2019-Ohio-246, ¶ 47-49 (reviewing duty, breach, and

proximate cause when considering immunity of political subdivision for employee's negligent operation of a school bus). *See also Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 10 (characterizing "concepts related to duty and breach" as "part of the statutory-immunity standards"); *Hubbell*, 115 Ohio St.3d 77 (where the political subdivision argued negligence was lacking under tier two and asserted a tier three defense and the trial court found a genuine issue for trial, the Supreme Court found the judgment was appealable without distinguishing what tier was appealed); *Tangler v. Village of Carrollton*, 7th Dist. Carroll No. 17 CA 0920, 2018-Ohio-1343, 110 N.E.3d 165, ¶ 18 ("[B]efore R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action-duty, breach, proximate cause, and damages; and (2) that the negligence arose out of a 'proprietary function.'").[1]

{¶26} Pursuant to Civ.R. 56(C), summary judgment shall be granted when the evidence shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Summary judgment shall not be rendered unless it appears that reasonable minds can only find in favor of movant after considering the evidence in the light most favorable to the non-movant. Civ.R. 56(C). A summary judgment movant has the initial burden of stating why the movant is entitled to judgment as a matter of law and showing there is no genuine issue of material fact. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-294, 662 N.E.2d 264 (1996). The non-moving party then has a reciprocal burden. *Id.* The non-movant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing there is a genuine issue for trial and may not rest upon mere allegations or denials in the pleadings. Civ.R. 56(E). The material issues of each case depend on the applicable substantive law, and "[o]nly disputes over facts that might affect

---

[1] Issues unrelated to the denial of immunity, including comparative negligence, cannot be addressed in the interlocutory appeal. *Sickles v. Jackson Cty. Hwy. Dept.*, 196 Ohio App.3d 703, 2011-Ohio-6102, 965 N.E.2d 330, ¶ 4-5, 21-30 (4th Dist.) (addressing duty and foreseeability as to the claimed negligent operation of a salt truck but refusing to address whether contributory negligence barred recovery). *See also Riscatti v. Prime Props. Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 19 ("a statute-of-limitations defense does not deny the benefit of immunity and is not a final, appealable order even though it arose along with a political subdivision's immunity claim").

the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Byrd*, 110 Ohio St.3d 24 at ¶ 12.

{¶27} A school district is a political subdivision. R.C. 2744.01(F). Political subdivision immunity entails three statutory tiers: (1) the general grant of immunity in R.C. 2744.02(A) for a government or proprietary function; (2) the exceptions in R.C. 2744.02(B) which strip the political subdivision of immunity; and (3) the defenses or immunities contained in R.C. 2744.02(B) or R.C. 2744.03 which establish non-liability. *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10-13. Regarding tier one, R.C. 2744.02(A)(1) provides: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." This general grant of immunity applies to governmental and proprietary functions.

{¶28} As for tier two, division (B) of R.C. 2744.02 lists exceptions to immunity, which strip immunity from the political subdivision for injury, death, or loss to person or property caused by: (1) negligent operation of a motor vehicle by an employee in the scope of employment and authority; (2) negligent performance of an act by an employee with respect to proprietary functions of the political subdivisions; (3) negligent failure to keep public roads in repair or to remove obstructions from public roads; or (4) negligence of an employee causing injury that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings used in connection with the performance of a governmental function. R.C. 2744.02(B)(1)-(4). A fifth exception exists when civil liability is expressly imposed upon the political subdivision by another statute. R.C. 2744.02(B)(5). The parties in this case addressed the first exception (negligent operation of a motor vehicle) and the fourth exception (physical defect on grounds) each corresponding to a different claim.

{¶29} As for the third tier, R.C. 2744.03(A) provides "defenses or immunities" that "may be asserted" by the political subdivision "to establish nonliability." *See also* R.C. 2744.02(B)(1)(a)-(c) (defense to the negligent operation of a vehicle exception if a certain driver was responding to an emergency call). Contrary to the Plaintiff's suggestion, the

Case No. 18 MA 0075

District does not raise a third tier defense on the negligent operation claim but briefly outlines a third tier defense on the hillside claim. *Citing* R.C. 2744.03(A)(5) (injury "resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner").

<u>HILLSIDE WAS NOT A PHYSICAL DEFECT</u>

**{¶30}** The District begins by addressing its request for immunity on the Plaintiff's hillside claim. The parties disputed whether the physical defect exception to immunity in R.C. 2744.02(B)(4) applied to the hillside claim. The trial court instead applied the proprietary function exception to immunity in (B)(2), which provides: "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). The District states the Plaintiff's hillside claim involved an injury "allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental * * * function." R.C. 2744.01(A).

**{¶31}** A governmental function is a function of a political subdivision that is specified in R.C. 2744.01(C)(2) or that satisfies any of the following:

(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the state;

(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

R.C. 2744.01(C)(1). Division (C)(2) specifically defines a governmental function as including the provision of a system of public education. R.C. 2744.02(C)(2)(c). *See also* R.C. 2744.02(C)(2)(x) (a governmental function includes a function the general assembly

mandates a political subdivision to perform).  The general grant of immunity attaches to acts or omissions "in connection" with a governmental function.

**{¶32}** The complaint claimed the school district "negligently failed to prohibit access, by students, to the hillside."  The Plaintiff's opposition to summary judgment complained the driver reported the student rolling down the hillside the day before the accident in order to alert school officials "so they could have someone go out and stop the activity.  No one in the school administration responded to her report."  The suggestion that a school official should have lectured, disciplined, better supervised, or restricted a student due to her dangerous behavior on school property during dismissal is an alleged omission in connection with a governmental function.  *See* R.C. 2744.01(C)(2)(c).  *See also* R.C. 2744.01(C)(2)(e) (regulation of the use of public grounds is a governmental function).  "Maintaining order and security in the classroom and on school grounds is an integral part of providing a system of public education."  *Craycraft v. Simmons*, 2d Dist. Montgomery No. 24313, 2011-Ohio-3273, ¶ 21 ("providing school security and related tasks cannot be separated from the provision of a system of public education").  *See also Bush v. Beggrow*, 10th Dist. Franklin No. 03AP-1238, 2005-Ohio-2426, ¶ 35 (government function where it was alleged a school had a duty to ensure a student could safely leave school premises and to supervise as children were walking home after school).

**{¶33}** The Plaintiff's opposition to summary judgment also said "the steep hill here was not inherently dangerous.  However, when the school negligently permitted the young students to roll down the hill toward an unprotected roadway and failed to take steps to prevent those students from falling into bus traffic despite warnings, it created or at least allowed to exist a defect on the property that contributed to the [the student's] death."  To the extent the hillside claim alleged the lack of physical barrier, the failure to place a certain feature on the school's hill was also connected to a governmental function.

**{¶34}** The District focused on the fact any omissions regarding the hillside were connected to the governmental function of providing a public education system under R.C. 2744.01(C)(2)(c).  The statute includes in its definition of a governmental function the "design, construction, reconstruction, renovation, repair, maintenance, and operation of any school athletic facility * * * or any recreational area or facility, including, but not limited to, any of the following:  (i) A park, playground, or playfield * * *."  R.C.

Case No. 18 MA 0075

2744.01(C)(2)(u)(i). In addition, the regulation of the use of public grounds and sidewalks, and maintenance and repair of these places are governmental functions. R.C. 2744.01(C)(2)(e). The already-terraced hill physically supported the school's football field and other school grounds surrounding the school building. *See id. See also DeMartino v. Poland Local School Dist.*, 7th Dist. Mahoning No. 10 MA 19, 2011-Ohio-1466, ¶ 31 (maintaining public grounds by mowing grass is a governmental function).

{¶35} Finally, the parties agreed the hillside claim involved an act or omission in connection with a governmental function. (S.J. Mot. at 13; Opp.Memo. at F). The District's motion for summary judgment stated: the general grant of immunity applied in tier one of the analysis; the hillside claim involved a governmental function; and the exception for the negligent performance of acts with respect to a proprietary function was not applicable. The Plaintiff's response agreed with these positions. The physical defect exception in R.C. 2744.02(B)(4) was the only exception to immunity alleged by the Plaintiff to be applicable to the hillside claim. And, the Plaintiff's brief does not argue the hillside claim involved a proprietary function.

{¶36} As the hillside claim does not involve the negligent performance of acts by employees with respect to proprietary functions of the political subdivision, we turn to the District's arguments that the physical defect exception to immunity was inapplicable.[2] This exception provides in pertinent part: "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *." R.C. 2744.02(B)(4).

{¶37} The District sets forth various arguments against the application of this exception and briefly mentions a third tier defense, concluding that even if the physical defect exception applied to the hillside claim, immunity would be restored under R.C. 2744.03(A)(5) (exercise of discretion in certain decisions). As we agree the hillside was not a physical defect, we need not address the District's alternative arguments.

---

[2] *See Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 13 (where the lower courts applied a common law rule instead of the immunity statute, the Court noted it would ordinarily remand for application of the proper immunity standard but then opined, "this case calls out for a different course").

Case No. 18 MA 0075

**{¶38}** The District correctly argues the existence of the hill was not a physical defect on the school grounds. A physical defect has been defined as "a perceivable imperfection that diminishes the worth or utility of the object at issue." *Stanfield v. Reading Bd. of Edn.*, 2018-Ohio-405, 106 N.E.3d 197, ¶ 14 (1st Dist.). *See also O.G. v. City of Middleburg Hts.*, 2017-Ohio-7604, 97 N.E.3d 796, ¶ 12-13, 17 (8th Dist.) (and may include the situation where the instrumentality causing the injury failed to operate as intended due to a perceivable condition); *Slane v. Hilliard*, 2016-Ohio-306, 59 N.E.3d 545, ¶ 44 (10th Dist.) (failure to activate lights for "zero period" did not constitute a physical defect).

**{¶39}** The Plaintiff's opposition to summary judgment acknowledged "the steep hill here was not inherently dangerous" but then said the existence of the unprotected public roadway near the bottom of the hill allowed the hill to be considered a physical defect. The Plaintiff noted a physical defect includes a potentially dangerous and unprotected condition on school property. *Citing Kerber v. Cuyahoga Hts.*, 8th Dist. Cuyahoga No. 102419, 2015-Ohio-2766, ¶ 26 (finding a genuine issue of material fact as to whether the use of a low-deck lifeguard chair created a physical defect on the pool grounds); *Roberts v. Switzerland of Ohio Local School Dist.*, 7th Dist. Monroe No. 12 MO 8, 2014-Ohio-78, 7 N.E.3d 526, ¶ 2, 25, 30 (affirming the denial of a motion to dismiss where the alleged physical defect was a discus "safe zone" that lacked a protective cage or net).

**{¶40}** However, these cases involved an unprotected danger existing on the pertinent grounds. The course traveled by the student down the hill admittedly contained no internal defects. It is as if the Plaintiff was saying the hill became defective once the high school student decided to roll down it toward traffic; however, a hill bordering a sidewalk and street does not become defective because a person decides to roll down it, just as the unfenced flat portions of the high school's grounds would not become defective because a student decides to run into the street. As the District points out: the hill operated as a hill would be expected to operate; the hill was not alleged to contain a physical or perceivable imperfection in itself; there was no impairment of the hill's utility as a physical support for the school grounds or even as a path for traversing the property; and any appreciable danger near the hill existed outside of the school grounds.

**{¶41}** Notably, the Plaintiff makes no argument as to the hillside claim on appeal, the Plaintiff's brief does not seek to apply the physical defect exception or discuss any of its elements, and the Plaintiff disclosed at oral argument that it "was not pursuing" the hillside claim. As the hill was not a physical defect on the school grounds, the denial of summary judgment on the hillside claim is reversed and summary judgment is granted on the hillside claim on the basis of political subdivision immunity.

<u>NEGLIGENT OPERATION OF A MOTOR VEHICLE</u>

**{¶42}** The District's assignment of error states the "District is entitled to statutory immunity with regard to the Plaintiffs' claims, the lower court erred by failing to grant Defendant's Motion for Summary Judgment on the issue of statutory immunity, [and] Plaintiff's claims are barred because the Defendant was not negligent * * *." As set forth in reciting the law supra, "negligent operation of a motor vehicle by an employee in the scope of employment and authority" is a statutory exception to the general grant of political subdivision immunity. R.C. 2744.02(B)(1). The District does not dispute that this claim is based on the operation of a motor vehicle by an employee in the scope of employment and authority but sets forth arguments on duty and breach to show the operation of the bus was not negligent.

**{¶43}** The District relies on the law stating a driver proceeding lawfully in the right-of-way has no duty to look for pedestrians who may suddenly enter the street, noting the driver was attentive to the rolling peril and the bus was traveling below the speed limit in the proper lane. The District states the bus driver was proceeding lawfully in her right-of-way, which is defined as: "The right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path." R.C. 4511.01(UU)(1). In support of its argument that the bus had the right-of-way, the District cites various statutes violated by the student.

**{¶44}** For instance, "No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle, trackless trolley, or streetcar which is so close as to constitute an immediate hazard." R.C 4511.46(B). "Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along

<u>Case No. 18 MA 0075</u>

and upon an adjacent roadway," and except as provided in certain statutes, "any pedestrian upon a roadway shall yield the right-of-way to all vehicles, trackless trolleys, or streetcars upon the roadway." R.C. 4511.50(A),(D). Finally, "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles, trackless trolleys, or streetcars upon the roadway." R.C. 4511.48(A). But, "This section does not relieve the operator of a vehicle, streetcar, or trackless trolley from exercising due care to avoid colliding with any pedestrian upon any roadway." R.C. 4511.48(E).

**{¶45}** "The existence of a duty depends on the foreseeability of the injury." *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). Although there is no specific formula for determining whether a duty arose, "[t]he existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). *See also Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22. Furthermore, the mere fact a driver hits a pedestrian does not establish a genuine issue as to a breach of duty. *See Meyer v. Rapacz*, 8th Dist. Cuyahoga No. 95571, 2011-Ohio-2537, ¶ 24.

**{¶46}** Generally, a driver does not have a duty to continually scan for approaching objects which may threaten to violate her right-of-way. *See Lydic v. Earnest*, 7th Dist. Mahoning No. 02CA125, 2004-Ohio-3194, ¶ 30, 34, citing *Deming v. Osinski*, 24 Ohio St.2d 179, 181, 265 N.E.2d 554 (1970). *See also Rapp v. Sullivan*, 7th Dist. Mahoning No. 12 MA 227, 2013-Ohio-5378, ¶ 19, 28. The Supreme Court rejected the premise that a driver with the right-of-way was required to "look, look effectively and continue to look and otherwise remain alert" in a case where the motorcyclist looked at his friend just prior to a car pulling in front of him. *Deming*, 24 Ohio St.2d at 180-181. The driver of a vehicle lawfully proceeding in his right-of-way has the right to assume another driver or a pedestrian will obey any law requiring him to yield the right-of-way. *See Deming*, 24 Ohio St.2d at 182, citing *Morris v. Bloomgren*, 127 Ohio St. 147, 187 N.E. 2 (1933). The general rule is: "Only after it has been found that the vehicle is not proceeding in a lawful manner, by violating a law or ordinance, does the consideration of the driver's common-law duty to use ordinary care come into play." *Lydic*, 7th Dist. No. 02CA125 at ¶ 32.

Case No. 18 MA 0075

**{¶47}** As the Plaintiff points out, there is an exception to the general rule where the driver noticed the peril. The Supreme Court has explained the exception as follows: "If however the [driver with the right-of-way], just as he is approaching or entering the intersection, discovers that the latter is not yielding the right of way and has thereby placed himself in a perilous situation, it becomes the duty of the former to use ordinary care not to injure the latter after becoming aware of his perilous situation." *Deming*, 24 Ohio St.2d at 182, quoting *Morris*, 127 Ohio St. 147 at paragraph five of syllabus. This exception has been applied to pedestrians entering the right-of-way as well as cars. The exception asks not whether a reasonable driver should have noticed the peril but whether the driver in fact noticed the peril and, if so, whether she then used ordinary care under the circumstances.

**{¶48}** The Plaintiff argues there is a genuine issue of material fact as to whether the driver was proceeding lawfully. Plaintiff cites R.C. 4511.38(A), which provides: "No person shall start a vehicle, streetcar, or trackless trolley which is stopped, standing, or parked until such movement can be made with reasonable safety."[3] It is undisputed that the bus driver saw the student rolling, worried the student would roll into the street, and maintained the stopped position of the bus because of the appreciated danger. The Plaintiff claims the driver violated this statute by moving the bus after the student stopped rolling, suggesting a driver who notices a person engaging in a dangerous behavior, stops for it, and believes it is over must anticipate a side effect of the dangerous behavior in the form of dizziness so strong that the student would stumble across a sidewalk and a grass trip and fall into the roadway (and anticipate that the student would try to walk near a street if she felt that dizzy). However, R.C. 4511.38(A) does not conflict with or abrogate the law stating there is no duty to look for objects outside of the right-of-way to ensure one of these objects is not about to violate the right-of-way. That is, ascertaining if movement can be made with reasonable safety under the statute does not entail a

---

[3]The Plaintiff also claims the driver may have violated R.C. 4511.21(A) by driving at a greater speed than would permit the person to stop within the assured clear distance ahead. However, this statute was not cited below, and the pedestrian did not enter the roadway ahead of the driver's path of travel but suddenly entered as the bus passed. The case cited by Plaintiff states the driver must have "collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible." *McQueen v. Perry*, 10th Dist. No. 12AP-237, 2012-Ohio-5522, ¶ 14, citing *Blair v. Goff-Kirby Co.*, 49 Ohio St.2d 5, 7, 358 N.E.2d 634 (1976).

continual scan for objects outside of the road which could threaten (or re-threaten) to improperly enter the right-of-way. The statute involves the safety of movement on the public street as such movement first occurs from a stop. For purposes of the general rule on the right-of-way, we conclude the bus did not violate R.C. 4511.38(A) and was not operating unlawfully by starting forward after it had waited for the student to discontinue rolling.

{¶49} According to the affidavit of the Plaintiff's expert, the bus was located at least 40 feet from the student, when the bus began accelerating from its stopped position and the student was beginning to stand at the bottom of the hill with her back to the road. The student's brother was holding her arm at this time, and she was not near the road. This is not a case where a pedestrian entered the roadway in reliance on the fact that a driver was stopped and the driver started the vehicle without ascertaining if the roadway was clear.

{¶50} The Plaintiff applies the noticed peril exception to the general rule, contending the bus driver failed to exercise reasonable care in the face of a known peril. However, at the point the bus started moving, the observed dangerous act of rolling down a hill toward traffic was over. The danger appreciated at that dispositive moment in time was the danger of rolling over the sidewalk and grass strip and into the street. When the bus started its movement, the student was not in close proximity to the road, she was facing her brother with her back to the bus (and the road), and there was no indication of stumbling.

{¶51} On the question of whether there was a duty to continue watching the student as the bus drew nearer to her position, the Plaintiff asks this court to impose a special duty since the pedestrian was a child. The Plaintiff emphasizes the driver's training where she was instructed on the unpredictability of children, to stop and watch if she was concerned, and to use the horn if she believed one was about to enter the street. The Plaintiff complains the driver did not sound the horn or stop (again) for the student and relies on law explaining why "children have a special status in tort law":

> [T]he amount of care required to discharge a duty owed to a child of tender
> years is necessarily greater than that required to discharge a duty owed to
> an adult under the same circumstances. This is the approach long followed

by this court and we see no reason to abandon it. "Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter. * * * The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ; and therefore the greater precaution should be taken, where children are exposed to them."

*Bennett v. Stanley*, 92 Ohio St.3d 35, 748 N.E.2d 41 (2001) (five-year-old drowning in neighbor's unfenced pool), quoting *DiGildo v. Caponi*, 18 Ohio St.2d 125, 127, 247 N.E.2d 732 (1969) (four-year-old guest put unlocked car in gear).

**{¶52}** More specifically on pedestrians, the Plaintiff quotes: "the duty owed by a driver to an adult on a sidewalk is certainly much less than the duty owed by a driver to a child of tender years and youthful persons playing on a sidewalk because the same discernment and foresight in comprehending dangers cannot be reasonably expected of children that adult persons habitually employ and, therefore, greater precautions must be taken where children are exposed to danger from passing traffic." *Sargent v. United Transp. Co.*, 56 Ohio App.2d 159, 163, 381 N.E.2d 1331 (10th Dist.1978) (four-year-old on bicycle). We note that case was tried to the court and was remanded for application of the above law; after the remand, the court agreed the failure to notice the child of tender years was not a breach of duty owed by the defendant. *Sargent v. United Trans. Co.*, 10th Dist. Franklin No. 78AP-461 (Feb. 13, 1979).

**{¶53}** Even where greater care is required (than would be required for an adult pedestrian), the care is still proportional to age. The care to satisfy a duty to watch a teenager on a sidewalk is not the same as may be required in a case involving the observation of a four-year-old bicycling in the street. And, even where there is a heightened duty of care to young children, "negligence cannot be found on the part of a driver when a child darts in the path of that driver rendering it impossible for the driver to avoid striking the child." *Williams v. Putnam Transfer & Storage Co.*, 8th Dist. Cuyahoga No. 64659 (Feb. 3, 1994).

**{¶54}** The student was not a child of tender years. She was a high school student leaving the high school grounds just after the students were released for the day. The

Case No. 18 MA 0075

student was over 14.75 years of age (ten weeks from her 15th birthday). The driver exercised care by waiting for her to stop rolling down a hill toward the road before moving the bus. There was no indication the bus driver's training instructions, on using the horn, were legal requirements or caused the care to become less than that required for the circumstances. *See Davis*, 7th Dist. No. 17 CO 0026 at ¶ 55-56, 60-67 (refusing to impose a heightened standard of care for the alleged failure to follow CDL standards, including those for professional bus drivers, where they are not legal requirements, after considering the totality of the circumstances pertinent to imposing a duty).

{¶55} Furthermore, the student's decision to roll down the hill and the possibility of rolling into the street was the peril noticed by the bus driver. As the bus resumed its movement, the student's brother was helping her to her feet; no stumbling had started yet. The noticed peril was over. She was near the hill on the sidewalk with her back to the bus. She was not waiting for a bus or attempting to cross a road. There was no clearly dangerous condition at that moment. See *Lydic*, 7th Dist. No. 02CA125 at ¶ 34 (the driver with the right of way must realize there is a clearly dangerous condition).

{¶56} The Plaintiff's expert said the driver could have stopped if she had been alert to the initial stumbling. However, the driver had no duty to continue watching the student after the rolling incident ended and the bus started moving, and a driver could not continually monitor one person on a sidewalk while driving. After she stood, it took seconds for her to stumble. The driver could not anticipate the student would fall into the side of the bus as it passed. *See Davis*, 7th Dist. No. 17 CO 0026 at ¶ 66-68 (concluding the entry into the bus driver's right of way was not reasonably foreseeable, there was no evidence the bus driver should have realized there was a clearly dangerous condition, or that she failed to use ordinary care after noticing the condition).

{¶57} Finally, there was no indication that the bus could have been stopped in time once the driver saw the student in the side view mirror (as the student was entering the roadway). The affidavit of the District's expert stated the bus driver did not have an opportunity to avoid the accident after she became aware the student had entered the roadway; the affidavit of the Plaintiff's expert only opined the bus could have been stopped if the bus driver saw the stumbling after the student stood, when she did not. In

Case No. 18 MA 0075

conclusion, this court concludes the District is entitled to summary judgment on the negligent operation of a motor vehicle claim.

**{¶58}** As we have ruled against the Plaintiff on the issue of negligent operation of a motor vehicle, we need not address the District's alternative argument that the action would also be barred by the student's contributory negligence.[4]  Likewise, we need not address the court's denial of summary judgment on the father's claim.  As we conclude the District is entitled to summary judgment on the hillside claim and the negligent operation of a motor vehicle claim, the negligent infliction of emotional distress claims fail as they were predicated on the allegations of negligence resulting in injury to the deceased student.  The Plaintiff does not argue otherwise.

**{¶59}** For the following reasons, the trial court's judgment is reversed, and summary judgment is granted to the District on the Plaintiff's claims.

Waite, P.J., concurs.

Singer. J., concurs.

---

[4] This argument was not specified in the District's motion for summary judgment, and the District's reply in support said "contributory negligence is not relevant to the analysis of whether Defendant is entitled to summary judgment."  We also note the failure to grant summary judgment on the issue of comparative negligence would not be appealable as it does not deny the political subdivision the benefit of immunity as required by R.C. 2744.02(C).  *See fn.* 1, supra.

[Cite as *McCullough v. Youngstown School Dist.*, 2019-Ohio-3965.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is reversed and summary judgment is granted to the District. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**