[Cite as *Knab v. Washington Cty. Bd. of Commrs.*, 2024-Ohio-1569.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

KEVIN KNAB, et al.,                               :

                    Plaintiffs-Appellants,   :    Case No.  23CA2

                    v.                                :

WASHINGTON COUNTY BOARD              :    DECISION & JUDGMENT ENTRY
 OF COMMISSIONERS,

                    Defendant-Appellee.       :

_____

APPEARANCES:

Laura K. Silwani, Marietta, Ohio, for appellants.

Scyld D. Anderson and Sarah A. Lodge, Columbus, Ohio, for appellee.

_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:4-18-24
ABELE, J.

{¶1} This is an appeal from a Washington County Common Pleas Court summary judgment in favor of the Washington County Board of Commissioners, defendant below and appellee herein.

{¶2} Kevin and Kristeva Knab, plaintiffs below and appellants herein, assign the following error for review:

> "THE TRIAL COURT ERRED IN GRANTING SUMMARY
> JUDGMENT TO THE DEFENDANT/APPELLEES [SIC] AS
> THERE WAS A MATERIAL ISSUE IN DISPUTE THAT
> SHOULD HAVE BEEN DECIDED BY THE TRIER OF

FACT AT A FULL TRIAL."

On October 1, 2020, appellee learned that sewage had backed up into some homes located on Seneca Street. Appellee requested the City of Marietta's assistance to help resolve the issue. Upon arrival, city employees used a "spoon" to dislodge a clog, and the sewer began to flow normally.

{¶4} On that same date, appellants discovered that sewage backed up into their home. Subsequently, they filed a complaint against appellee to recover damages they incurred as a result of the backup. They alleged that on October 1, 2020, appellee "forced pressure through the sewer lines that service [appellants'] home" and this forced pressure caused a sewer backup into their home. They also generally alleged that "waste, water, and other material from the county sewer" entered their home.

{¶5} Appellants claimed that appellee (1) negligently operated the sewer system by their failure to keep the "sewer system in repair and free from conditions that would cause damage to private property," and (2) negligently maintained the sewer system. Appellants asserted that, as a direct and proximate result of appellee's negligent operation and maintenance of the sewer system, appellee caused an "enormous quantity and volume of unsanitary wastewater to back up into and upon [appellants'] real and personal property."

{¶6} Appellants further alleged that the sewer backup constituted a trespass, "an unlawful taking of [their] property without just compensation," and a nuisance.

{¶7} Appellee answered and filed a partial motion for judgment on the pleadings. Appellee argued that appellants did not properly institute their takings claim because appellants must file a mandamus action to compel appellee to institute appropriation proceedings. The trial court agreed and granted appellee's motion for judgment on the pleadings regarding appellants' takings claim.

{¶8} On October 26, 2022, appellee filed a summary judgment motion and alleged that appellants' claim that "sewage was pressure-forced into [appellant's] home" "is untrue." Appellee asserted that city employees fixed the clog "with a spoon, and after it was removed, the line began to drain on its own." Appellee contended that neither it nor the city employees did anything "wrong." Appellee argued that the sewage entered appellants' home due to the lack of a backflow prevention device and an uncapped wye pipe.

{¶9} Appellee agreed that it has a duty to maintain its sewers and defined its duty as a duty to promptly remove the obstruction once it received notice that the sewer needed to be cleared. To support its definition of this duty, appellee

referred to *Portsmouth v. Mitchell Mfg. Co.*, 113 Ohio St. 250, 148 N.E. 846, (1925).  In that case, the Ohio Supreme Court held:

> When a municipal corporation assumes the control and management of a storm sewer which has been constructed in a public street under its supervision, it is bound to use reasonable diligence and care to see that such storm sewer is not clogged with refuse, and is liable for negligence in the performance of such duty to a property owner injured thereby, after reasonable notice of the clogged condition of such sewer.

*Id.* at paragraph two of the syllabus.

{¶10} Appellee further relied upon our prior decision in *Williams v. Glouster*, 4th Dist. Athens No. 10CA58, 2012-Ohio-1283.  In that case, we determined that a village was not statutorily immune from liability for its failure to properly maintain its sewer system.  In doing so, we rejected the village's argument that the plaintiff's "flooding problem stemmed from negligent design rather than negligent maintenance."  *Id.* at ¶ 28.  We also determined that genuine issues of material fact remained regarding the village's negligence.  The evidence demonstrated that for a two-year period, the village did not routinely maintain a storm drainage system but, instead, only cleaned the system when the plaintiff complained about the clogged drain.  Additionally, when the village employees did clean the drain, they left refuse, sand,

and other materials in a pile right beside the drain.  On the date of the plaintiff's injury she called the village ten times to report the clogged drain, but the issue was not resolved.  We stated that if the village had "provided regular maintenance to the drain, it likely would not have been clogged beyond correction when [the village] tried to clean it out * * * just a few days prior to [the plaintiff's] injury."  *Id.*  We thus concluded that genuine issues of material fact remained regarding the village's negligence.

{¶11} Appellee also asserted that *Williams* stands for the further proposition that questions of fact remain regarding a negligent maintenance claim when evidence shows that a homeowner made repeated complaints regarding a clogged drain and the governmental entity did not take adequate steps to resolve those complaints.  Appellee then used this proposition to contend that the sewer near appellants' home did not have a known, "persistent problem requiring regular attention."  Appellee noted that appellants alleged that "one minor instance" had occurred in 2018, but further pointed out that appellants did not report this incident.  Appellee thus asserted that the record does not contain any "evidence of a persistent, known problem requiring regular attention that would justify holding that [appellee] has to regularly inspect and clean that

particular stretch of sewer in order to prospectively prevent clogs."

{¶12} To support its motion, appellee submitted an affidavit from Joseph White, the Superintendent of the Washington County wastewater department.  White stated: "Based upon the deposition testimony, it is clear that the removal of the clog by the City of Marietta did not cause sewage to enter [appellants'] residence."  He additionally averred that the sewage appeared to enter appellants' home "through an uncapped wye" and this wye "should have been capped."  White further attested that, if appellants had a backflow prevention device, "it is very likely that [their] residence would not have experienced a sewer intrusion on October 1, 2020."  White also stated that appellants' home is the lowest lying house on the sewer line and, thus, is "a prime candidate for a backflow prevention device."

{¶13} Appellee also referenced the various depositions that had been conducted.  In his deposition, Kevin Knab agreed that he had received a July 23, 2018 letter from appellee and in this letter, appellee advised appellants and other residents to "investigate and install a sanitary sewer backup solution." Knab stated that appellants investigated installing a sanitary sewer backup solution, but decided not to install one due to the

costs involved.  Knab also stated that in July 2018, appellants'
home had a minor sewage intrusion, but appellants did not report
it to appellee.  He presumed that someone reported a sewer
problem, but he did not know any details.  With respect to the
October 1, 2020 incident, Knab said that the individuals who
performed the cleanup "stated that there was so much pressure
that sewage was being pumped up through that vent pipe."  Knab
agreed that this vent pipe did not have a cap on it.

{¶14} Tim Wittekind, a former employee of the City of
Marietta, stated that he and his co-worker used a "spoon" to
dislodge the clog.  He explained that this "spoon is basically a
12-foot handle with a pointed shovel end mounted on the end of
it."  Wittekind explained that the spoon "is used to help locate
a trough area down inside of a manhole so you can kind of get a
general idea of where the line is running through."  Wittekind
related that they were able to dislodge the obstruction with the
spoon.

{¶15} City of Marietta employee Michael Miser stated that
Shawn Dalrymple, the person who had been in charge of appellee's
wastewater department, called him to ask if Miser could bring a
"vac truck" for a sewer line that was backed up.  Dalrymple
stated that "it had been backed up for some time."  Miser asked
Wittekind and Jeffrey Schultheis to respond.  Miser also asked

Dalrymple for the location, and Dalrymple told him that "it was on Seneca Street, where we had been before." Miser clarified that Dalrymple's quote was "where we had been before." Miser stated that he "vaguely remember[s] personally being on Seneca Street in the past to clean a plugged sewer, but [he does] not remember the date or the address." Miser explained that he also reviewed the "sewer complaints back to 2011 and could not find a complaint sheet" for the Seneca Street address.

{¶16} City of Marietta employee Jeffrey Schultheis stated that he believes that sewage entered appellants' home as a result of the sewer backup. He also thinks that the clog had existed "for a week or so." He indicated that the type of clog they discovered on October 1, 2020, does not "happen overnight." Schultheis further explained that he has been with the city since 2019, and he had not been to the Seneca Street location in the past.

{¶17} On November 23, 2022, appellants filed a memorandum in opposition to appellee's motion. They asserted that genuine issues of material fact remain regarding "whether [appellee] negligently maintained the sewer line * * * near [appellants'] home, therefore causing nuisance and trespass into [appellants'] home resulting in severe property damage [sic]." Appellants argued that appellee had "not provided a maintenance schedule

for that portion of the [Seneca Street] sewer and have not shown any regular maintenance of the sewer." They claimed that appellee failed to conduct routine maintenance and inspection and that the clog had "built up" due to appellee's failure to maintain the sewer. Appellants pointed to the Miser and Schultheis deposition testimony that indicated that the sewer "had been 'backed up for some time,' perhaps a week or longer."

{¶18} Appellants stated that they will show at trial that the sewer issue "can be identified with regular inspection and remedied with routine maintenance as needed." They argued that appellee's failure to conduct routine maintenance, inspection, and cleaning of the sewer caused the backup and that appellee failed to comply with its duty of routine maintenance. Appellants contended that "[t]he material question of fact that a jury needs to decide in this case is whether that initial clog was permitted to grow and lodge in the sewer main due to the negligent inspection and maintenance of the sewer."

{¶19} Appellants also faulted Dalrymple for failing to appear for his deposition. They argued that he likely would have had the information regarding appellee's "maintenance schedule, or lack thereof, the history of that area as there were issues previously, and the relevant information from October 1, 2020."

{¶20} Appellants further argued that any issues that surrounded their decision not to install a backflow device and to ensure that the wye was capped relate to comparative negligence and establishes that genuine issues of material fact remain.  They also contended that the reason for the sewage backup into their homes has not been definitively established.

{¶21} To support their arguments, appellants submitted a report from a sewer inspector, Brian S. Burnside, and an affidavit from a neighbor, David M. Bright.  Burnside stated that on July 2, 2022, he inspected appellants' home and the main sewer line.  He explained that when he viewed the sewer line, "the main line [was] exhibiting a problem.  The effluent [was] not flowing into the manhole basin[;] it is 'bubbling in' suggesting that the main line currently has a problem and is under a state of back up now."  Burnside recommended that "the main line be cleaned and inspected and any deficiencies be corrected."

{¶22} With regard to whether a backflow device would have prevented a sewer backup into appellants' home, Burnside stated that "backflow devices can be useful for a property owner to limit their risk[;] however, they are not fool proof and are not designed to compensate for main line deficiencies."  He would, however, "recommend a sewer backflow device as it may have

prevented a sewer back up."  Burnside further stated that the "volume of effluent in this case is indicative of a main line back up which can only be fixed by the utility service provider."

{¶23} Bright stated that he worked from home between March 2020 to July 2022.  He saw work being done on the sewer line on October 1, 2020.  Up until July 7, 2022, Bright had not observed any routine maintenance, inspection, or cleaning of the sewer line.  Bright further stated that one manhole cover on Seneca Street has been "paved over" and, thus, it "would not be able to be cleaned or inspected without tearing up the road and cutting around the edge."

{¶24} Appellee, however, asserted that appellants' arguments are based upon a misunderstanding of Ohio law and they failed to produce any evidence to create a genuine issue of material fact. Appellee alleged that it does not have "a duty to continuously scan its sewer mains to prevent the occurrence of clogs." Instead, appellee contended that it had a duty to remove a clog after receiving notice.  Appellee argued that when it became aware of the clog on October 1, 2020, it promptly responded by requesting the city employees to respond to the area.  Appellee also disputed appellants' claim that it has a duty to keep a maintenance log or prepare a formal maintenance schedule.

Appellee further alleged that even if the clog had been present for a week before the backup, "it is patently unreasonable to expect the County to perform preventative sewer main cleaning, or even video inspection, on a weekly basis." Appellee asserted that it does not have "a duty to prophylactically clean, or even inspect, a sewer main that is otherwise in good condition." Appellee additionally contended that it is undisputed that the sewage entered appellants' home through the uncapped wye and that appellants' negligence thus predominated.

{¶25} Appellee also argued that Bright's affidavit did not create a genuine issue of material fact because "[e]ven if he kept vigil 24 hours a day, 7 days a week, 365 days a year and saw nothing more than the clog being removed on the day of the incident, there was still no breach of duty." Appellee reiterated that its duty "is to remove clogs promptly after receiving notice of them, not to prevent clogs that might have taken as much as a week [to] form."

{¶26} Appellee further asserted that (1) Burnside did not offer proper expert testimony by expressing a probability that appellee's conduct proximately caused appellants' damage, and (2) Burnside's letter does not satisfy Civ.R. 56(C)'s strictures. Appellee argued that "the only competent opinion testimony" (i.e., White's affidavit) shows that if appellants

"had installed a backflow prevention device, it is highly unlikely that sewage would have entered [their] home."

**{¶27}** With respect to Dalrymple's failure to appear for his deposition, appellee contended that appellants could have subpoenaed Dalrymple, but did not. And appellee argued that it did not have an obligation to ask the court to issue a show-cause order to Dalrymple. Appellee thus claimed that no genuine issues of material fact remained as to whether it breached its duty to maintain the sewer.

**{¶28}** On January 25, 2023, the trial court granted appellee summary judgment. The court stated that the issue is whether appellee breached a duty by failing to properly maintain the sewer. The court agreed with appellee's argument that "the requirement of proper maintenance is met by promptly removing clogs when they appear." The court applied the rule stated in *Williams v. Glouster*, supra, and stated that an owner of a sewer must use reasonable diligence and will be "liable for negligence in the performance of such duty to a property owner injured thereby, after reasonable notice of the clogged condition of the sewer." *Id.* at ¶ 23. The court found that the record did not contain any evidence to show that appellee "had reasonable notice of a clogged condition of the sewer and then failed to use reasonable diligence in correcting the problem." Rather,

the court found that the evidence showed that appellee "did promptly clear the clog when notified."

{¶29} The court further determined that the record did not contain any evidence of other homeowners' complaints regarding slow drainage or any other complaints that should have placed appellee on notice that the sewer needed maintenance or that an increased maintenance schedule was needed.

{¶30} The court additionally found that nothing in the record indicated a dilapidated sewer.  The court explained: "There was no evidence that the obstruction or any possible dilapidation was an ordinary result of the use of the sewer, which ought to be anticipated and could be guarded against by occasional examination and cleansing."  The court found "as a matter of law" that appellee "was not negligent and did not breach any duty of care owed to" appellants.  This appeal followed.

A

{¶31} In their sole assignment of error, appellants assert that the trial court erred by concluding that no genuine issues of material fact remained to be litigated at trial.  Appellants claim that genuine issues of material fact remain regarding whether appellee breached its duty to properly maintain the

sewer line because a fact finder could have determined that appellee breached its duty to maintain the sewer line.

{¶32} To illustrate that genuine issues of material fact remain, appellants point to Bright's affidavit, in which he stated that he "never observed maintenance, inspection, or preventative work done on the sewer." Appellants further refer to Burnside's letter that stated at the time of his July 2022 inspection, the sewer exhibited an issue.

{¶33} Appellants additionally observe that appellee did not produce any evidence to demonstrate that it complied with its duty of routine maintenance and inspection. Moreover, appellants note that the city employees who responded to the call "stated that this clog said [sic] had been occurring for some time and didn't happen overnight." They also contend that the evidence demonstrates that the sewer became clogged "approximately every two years." Appellants thus assert that if appellee had complied with its duty of "regular inspection and maintenance," then the clog would not have formed. They contend that appellee's "[l]ack of regular, routine maintenance, inspection, or other preventative work would arise to the level of negligence and allow [appellants] to succeed on their claims."

**{¶34}** Appellants additionally fault the trial court for considering only "whether the county responded to the inciden[t] in an appropriate time frame."  They claim that "[e]ven under this standard, a reasonable fact finder could have ruled in [appellants'] favor at trial as there was no evidence on the record that the county responded promptly."

**{¶35}** Appellee, however, asserts that no genuine issues of material fact remain because the record fails to contain any evidence "of a persistent, known problem requiring regular attention that would justify holding that [appellee] had to regularly inspect and clean that particular stretch of sewer in order to prospectively prevent clogs."  Appellee argues that it did not have a duty to "keep a formal 'maintenance schedule,' written or otherwise."  Appellee further claims that it also does not have "a duty to prophylactically clean a sewer main that is otherwise in good condition."

B

**{¶36}** Appellate courts conduct a de novo review of trial court summary judgment decisions.  *E.g., State ex rel. Novak, L.L.P. v. Ambrose*, 156 Ohio St.3d 425, 2019-Ohio-1329, 128 N.E.3d 209, ¶ 8; *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13; *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

Accordingly, an appellate court need not defer to a trial court's decision, but instead must independently review the record to determine if summary judgment is appropriate. *Grafton*, 77 Ohio St.3d at 105.

Civ.R. 56(C) provides in relevant part:

> * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶37}** Therefore, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. *E.g., State ex rel. Whittaker v. Lucas Cty. Prosecutor's Office*, 164 Ohio St.3d 151, 2021-Ohio-1241, 172

N.E.3d 143, ¶ 8; *Pelletier* at ¶ 13; *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶38}** Under Civ.R. 56, the moving party bears the initial burden to inform the trial court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a material fact. *E.g., Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The moving party cannot discharge its initial burden with a conclusory assertion that the nonmoving party has no evidence to prove its case. *E.g., Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 147, 677 N.E.2d 308 (1997); *Dresher, supra*. Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher, supra*.

> [U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant a summary judgment.

*Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec., Inc.*, 110 Ohio App.3d 732, 742, 675 N.E.2d 65 (2nd Dist.1996).

{¶39} Once the moving party satisfies its burden, the
nonmoving party bears a corresponding duty to set forth specific
facts to show that a genuine issue exists.  Civ.R. 56(E);
*Dresher, supra.*  More specifically, Civ.R. 56(E) states:

> * * * * When a motion for summary judgment is made
> and supported as provided in this rule, an adverse party
> may not rest upon the mere allegations or denials of the
> party's pleadings, but the party's response, by
> affidavit or as otherwise provided in this rule, must
> set forth specific facts showing that there is a genuine
> issue for trial.  If the party does not so respond,
> summary judgment, if appropriate, shall be entered
> against the party.

{¶40} Consequently, "'[m]ere speculation and unsupported
conclusory assertions are not sufficient'" to meet the
nonmovant's reciprocal burden to set forth specific facts to
show that a genuine issue exists.  *Bank of New York Mellon v.
Bobo*, 4th Dist., 2015-Ohio-4601, 50 N.E.3d 229, ¶ 13, quoting
*Loveday v. Essential Heating Cooling & Refrig., Inc.*, 4th Dist.
Gallia No. 08CA4, 2008-Ohio-4756, ¶ 9.  Thus, "'resting on mere
allegations against a motion for summary judgment * * * is
insufficient'" to defeat a properly supported summary judgment
motion.  *Jackson v. Alert Fire & Safety Equip., Inc.*, 58 Ohio
St.3d 48, 52, 567 N.E.2d 1027, 1032 (1991), quoting *King v. K.R.
Wilson Co.*, 8 Ohio St.3d 9, 10-11, 455 N.E.2d 1282, 1283 (1983).

{¶41} Additionally, when trial courts consider summary
judgment motions, Civ.R. 56(C) specifies that the court may

examine only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, [that are] timely filed in the action."  *Id.*; *Whitt v. Wolfinger*, 2015-Ohio-2726, 39 N.E.3d 809, 813-14, ¶ 12 (4th Dist.); *Davis v. Eachus*, 4th Dist. Pike No. 04CA725, 2004-Ohio-5720, ¶ 36; *Wall v. Firelands Radiology, Inc.*, 106 Ohio App.3d 313, 334, 666 N.E.2d 235 (6th Dist.1995).  "'Documents which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court.'"  *State ex rel. Shumway v. Ohio State Teachers Retirement Bd.*, 114 Ohio App.3d 280, 287, 683 N.E.2d 70 (1996), quoting *Mitchell v. Ross*, 14 Ohio App.3d 75, 470 N.E.2d 245 (8th Dist.1984).  A party may, however, introduce evidentiary material that does not fall within one of the categories of evidence listed in Civ.R. 56(C) when that material is incorporated by reference in a properly framed affidavit. *Thompson v. Hayes*, 10th Dist. Franklin No. 05AP-476, 2006-Ohio-6000, ¶ 103.

{¶42} "If a party submits evidence that does not fall within Civ.R. 56(C)'s parameters, the opposing party may file a motion to strike the improperly-submitted evidence."  *Whitt* at ¶ 13. The determination of a motion to strike is within a court's

broad discretion. *Id.*, citing *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 23. Consequently, appellate courts will not disturb trial court rulings regarding motions to strike unless the court abused its discretion. *Id.*, citing *State ex rel. Mora v. Wilkinson*, 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶ 10. A decision constitutes an abuse of discretion when it is unreasonable, arbitrary, or unconscionable. *Id.*, citing *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11. Moreover, when applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Id.*, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

**{¶43}** In the case sub judice, appellee argued in its reply memorandum that Burnside's letter, attached to appellants' opposition memorandum, is not proper Civ.R. 56 evidence. Apparently, the trial court did not specifically rule upon the propriety of the evidentiary material appellants included with their opposition memorandum. Nevertheless, when a trial court fails to rule upon a pretrial motion, courts generally presume that the court overruled it. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223, 631 N.E.2d 150, 155 (1994), citing *Newman v. Al Castrucci Ford*

*Sales, Inc.*, 54 Ohio App.3d 166, 561 N.E.2d 1001 (1988).

Moreover, appellee did not file a motion to strike.

Consequently, under these circumstances we presume that the

trial court overruled appellee's objection to the evidentiary

material. Moreover, appellee did not cross-appeal or argue that

the trial court abused its discretion by considering the

material. Thus, we believe that we may properly consider the

evidence.

{¶44} In the case at bar, as we explain, we agree with the

trial court's conclusion that no genuine issues of material fact

remain to be litigated at trial.

C

{¶45} A negligence action requires a plaintiff to establish

"(1) a duty requiring the defendant to conform to a certain

standard of conduct, (2) breach of that duty, (3) a causal

connection between the breach and injury, and (4) damages."

*Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d

257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 23; *accord Texler v. D.O.*

*Summers Cleaners*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998);

*Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 472

N.E.2d 707 (1984). If a defendant demonstrates that the

plaintiff will be unable to prove any one of the foregoing

elements, the defendant is entitled to judgment as a matter of

law.  *Feichtner v. Cleveland*, 95 Ohio App.3d 388, 394, 642 N.E.2d 657 (8th Dist.1994); *Keister v. Park Centre Lanes*, 3 Ohio App.3d 19, 443 N.E.2d 532 (5th Dist.1981).

{¶46} "'Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.'"  *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 773 N.E.2d 1018, ¶ 23, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989).  Whether a duty exists in a negligence action is generally a question of law for a court to decide.  *Snay v. Burr*, 167 Ohio St.3d 123, 2021-Ohio-4113, 189 N.E.3d 758, ¶ 14; *Wallace* at ¶ 22; *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶47} In the case sub judice, both parties agree that appellee owed appellants a duty of reasonable care.  They do not agree, however, upon the scope of that duty of reasonable care.  Appellee contends that its duty was to promptly remove the clog once it became aware of it.  Appellants, however, contend that not only did appellee have a duty to promptly remove the clog once it became aware of it, but it also had a duty of routine maintenance and inspection.  Appellants thus claim that genuine

issues of material fact remain as to whether appellee breached its duties.

{¶48} The oft-cited rule regarding a political subdivision's duty with respect to a sewer system is that the political subdivision has a duty to "use reasonable diligence and care to keep [its] sewer or drain in good repair." *Portsmouth v. Mitchell Mfg. Co.*, 113 Ohio St. 250, 255, 148 N.E. 846 (1925). With respect to clogged sewers, *Mitchell Mfg.* further stated a political subdivision "is bound to use reasonable diligence and care to see that such storm sewer is not clogged with refuse, and is liable for negligence in the performance of such duty to a property owner injured thereby, after reasonable notice of the clogged condition of such sewer." *Id.* at syllabus.

{¶49} In *Mitchell Mfg.*, the court determined that the city had not used reasonable care and diligence to keep its sewer in good repair. In that case, heavy rainfall caused water to seep into the plaintiff's building. Subsequently, the storm sewer located in front of the plaintiff's building "was found for the greater part to be full of dirt and silt." *Id.* at 252. Additionally, "substantial evidence" existed "that repeated notice had been given to the city of the condition of the sewers prior to the flooding thereof." *Id.* The court explained:

The record shows that the city, after cleaning out the storm sewer in question, upon numerous occasions permitted the refuse gathered from the catch-basins to stand upon the street in piles, and that with each succeeding rain this refuse was again washed back into the sewer. This being the case, we have here, not a mere omission upon the part of the city to perform a duty, but a positive act upon the part of the city which has resulted in the accumulation of refuse in the sewer, and the resultant maintenance of a nuisance in the street.

*Id.* at 253.

{¶50} The court further determined that the city's "operation and upkeep of sewers is not a governmental function, but is a ministerial or proprietary function of the city." *Id.* at 255. The court found that the city's "maintenance and upkeep of these sewers, so that they would function properly to clear the streets from excessive rainfall, was a proprietary function, in the performance of which the city is held to the duty of reasonable care." *Id.* at 253. As previously indicated, *Mitchell Mfg.* defined that duty of reasonable care in the context of a sewer clog as using "reasonable diligence and care to see that such storm sewer is not clogged with refuse, and is liable for negligence in the performance of such duty to a property owner injured thereby, after reasonable notice of the clogged condition of such sewer." *Id.* at syllabus.

{¶51} Thus, *Mitchell Mfg.* appears to stand for the proposition that a political subdivision is not "liable for

negligence in the performance" of its duty to use "reasonable diligence and care to see that [its] storm sewer is not clogged with refuse," unless the political subdivision had "reasonable notice of the clogged condition of such sewer." *Id.* In other words, a political subdivision does not breach its duty to use "reasonable diligence and care to see that [its] storm sewer is not clogged with refuse," unless the political subdivision had "reasonable notice of the clogged condition of such sewer" and then failed to use "reasonable diligence and care to see that [its] storm sewer is not clogged with refuse." *Id.*

{¶52} In a later case, the Ohio Supreme Court defined the duty as a "duty to keep [sewers] in repair and free from conditions which will cause damage to private property." *Doud v. Cincinnati*, 152 Ohio St. 132, 137, 87 N.E.2d 243 (1949). In *Doud*, the plaintiff filed a complaint against the city to recover damages that the home sustained as a result of the city's alleged negligent maintenance of its sewer. The evidence showed that "there was a gradual deterioration of the sewer over a period of years, which deterioration an occasional inspection would have disclosed," and that the city had not inspected the sewer for nearly 22 years. *Id.* at 133. The trial court determined that if the city had inspected the sewer "at reasonable intervals," it would have discovered the

"deteriorating condition of said sewer and prevented the resulting damage." *Id.* The court thus concluded that the city "failed to exercise reasonable care in the inspection of said sewer, and that said failure to inspect said sewer was the proximate cause of said damage." *Id.*

{¶53} The city appealed, and the appellate court reversed. On appeal to the Ohio Supreme Court, the plaintiff argued, in part, that the city had a duty "to inspect the sewer and maintain it in a safe condition." *Id.* at 137. The Ohio Supreme Court agreed.

{¶54} The defendant, however, argued that it could not be liable for damage to the plaintiff's property when it did not have any "notice of the defect in the sewer which caused the damage to plaintiff's property." *Id.* The court stated that a political subdivision "is not liable for damages growing out of a dangerous condition which suddenly arises in connection with the use or operation of its streets, sewers or other structures, until it has actual or constructive notice of such condition." *Id.* The court also recognized, however, that "where there rests upon the [political subdivision], as there did in this case, a duty of inspection of the sewer as an instrumentality under its supervision and control, the [political subdivision] becomes chargeable with notice of what reasonable inspection would

disclose." *Id.* The court thus stated that the political subdivision "was chargeable at all times with notice of defects which arose in the sewer in question through the slow process of deterioration." *Id.*

**{¶55}** In reaching its decision, the *Doud* court relied upon its previous decision in *Mitchell Mfg. Co.*, supra, that explained a political subdivision's duty "'to keep its sewers in repair'" as including

> "the exercise of a reasonable degree of watchfulness in ascertaining their condition, from time to time, and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to be anticipated and could be guarded against by occasional examination and cleansing, the omission to make such examinations and to keep the sewers clear is a neglect of duty which renders the municipality liable."

*Id.* at 138, quoting 38 Am.Jur. 341, Section 636, note 3; *see also Mitchell Mfg. Co.*, 113 Ohio St. at 255.

**{¶56}** The court noted that the trial court had found that the damage to the plaintiff's house

> was due to the gradual deterioration of the sewer in question; that an inspection of the sewer at reasonable intervals would have disclosed the deterioration; that the defendant failed to exercise reasonable care in the inspection of the sewer; and that such failure was the proximate cause of the damage.

*Id.* The court thus reversed the appellate court's decision and affirmed the trial court's decision that entered judgment in the plaintiff's favor.

**{¶57}** *Doud*, therefore, indicates that the scope of a political subdivision's duty with respect to a sewer condition depends upon whether the condition arose suddenly or gradually. If the condition arose suddenly, then the scope of the political subdivision's duty is to exercise reasonable care to resolve the condition once it receives notice of the condition. For sewer conditions that arise gradually, however, the political subdivision's duty is to exercise "a reasonable degree of watchfulness in ascertaining [the sewers'] condition, from time to time, and preventing them from becoming dilapidated or obstructed." *Id.*, quoting 38 Am.Jur. 341, Section 636, note 3

**{¶58}** Since these two decisions, numerous Ohio appellate courts have discussed the scope of a political subdivision's duties with respect to a sewer system. *E.g., Tangler v. Carrollton*, 2018-Ohio-1343, 110 N.E.3d 165, ¶ 20 (7th Dist.); *Pierce v. Gallipolis*, 2015-Ohio-2995, 39 N.E.3d 858 (4th Dist.); *Kendle v. Summit Cnty.*, 9th Dist. Summit No. 15268, 1992 WL 80074 (Apr. 15, 1992).

**{¶59}** In *Kendle*, the court explained the scope of a political subdivision's "duty to use due diligence to inspect

for defects." *Id.* at *2. In that case, the plaintiffs discovered raw sewage in their basement and immediately notified the county. A maintenance crew responded and discovered the main sewer line blocked and this sewage blockage caused the backup into the home. The plaintiffs subsequently filed a complaint against the county to recover the damages that they sustained as a result of the county's alleged negligent maintenance of the sewer.

**{¶60}** The county requested summary judgment and in support, the county relied upon evidence that "roots and undergarments" had caused the blockage. The county further submitted evidence to show that its last inspection of the sewer located on the plaintiffs' street occurred approximately two years and nine months before the sewage intruded into the plaintiffs' home. The trial court granted the county summary judgment, and the plaintiffs appealed.

**{¶61}** On appeal, the plaintiffs alleged that the rules set forth in *Mitchell Mfg.* and *Doud* established the county's negligence. They asserted that the county had "a duty to reasonably inspect its sewers to detect and eliminate blockages." *Id.* at *2. The plaintiffs claimed that the county's failure to inspect the sewer for nearly three years was

"inherently unreasonable and present[ed] a triable issue of fact." *Id.*

{¶62} The appellate court agreed that "the operation of a sewer system includes a duty to use due diligence to inspect for defects" and that the county "is chargeable with knowledge of what a reasonable inspection would have revealed." *Id.* The court did not agree, however, that the plaintiffs had produced evidence to establish genuine issues of material fact regarding the county's negligence.

{¶63} The court distinguished *Mitchell Mfg.* and noted that, unlike the plaintiff in *Mitchell Mfg.*, the plaintiffs in *Kendle* did not produce evidence that the county had notice regarding the condition of the sewer. The court distinguished *Doud* by explaining that unlike the situation in *Doud* that involved a gradual deterioration of the sewer, in *Kendle* no evidence existed that the sewer gradually deteriorated. The court also recognized that the plaintiffs argued that the county should have inspected the sewer on a more frequent basis. The court determined, however, that the record did not contain any evidence "that more recent inspections would have revealed the blockage that occurred in this case." *Id.* at *4. The court explained:

> The possibility of a sewer becoming clogged, absent any negligence, is an unfortunate circumstance which we all must face as incident to the benefits received from a public sewer system.    Accepting the [plaintiffs'] argument would make every operator of a public sewer system absolutely liable, absent any fault, for all damages resulting from a clogged sewer.

*Id.* The court thus affirmed the trial court's summary judgment.

**{¶64}** In *Pierce*, on the other hand, we determined that genuine issues of material fact existed regarding the city's "compliance with its duty to maintain the sewer lines." *Id.* at ¶ 35.  In that case, the plaintiffs asserted that the city negligently maintained its sewer line and thereby caused damage to their home and personal injury to one of the plaintiffs.

**{¶65}** The city requested summary judgment and argued, in part, that no genuine issues of material fact remained regarding whether it negligently maintained the sewer system.  The city submitted evidence that (1) it had not received notice of any conditions that suggested the sewer was in a state of disrepair before the event that caused the plaintiffs' injuries, and (2) it conducted routine maintenance of the sewer system.  The city also submitted evidence that "a large amount of fill on top of a steep slope of [the plaintiffs'] property without compensating fill at the bottom of the slope, combined with unusually heavy rainfall * * *, caused the land to slip, which then, broke the sewer line."  *Id.* at ¶ 4.

**{¶66}** The plaintiffs produced evidence that (1) the city had not conducted any maintenance on the sewer line located near the plaintiffs' property for 20 years, (2) several sewer backups had occurred in the area, (3) the city initially denied that a sewer line existed on the plaintiffs' property, and (4) the city did not take any corrective action for more than eight months after the incident. The plaintiffs also submitted expert opinion testimony that "the lack of maintenance of this sewer line allowed the line to fall into a state of disrepair" and ultimately caused the plaintiffs' injuries. Id. at ¶ 8. The trial court denied the city's summary judgment motion and the city appealed.

**{¶67}** On appeal, the city argued that the trial court erred by concluding that genuine issues of material fact remained as to whether it negligently maintained the sewer system because, the city claimed, the evidence shows that "it did conduct routine maintenance of its sewer lines" and "had no prior knowledge of issues with the sewer line." *Id.* at ¶ 30. This court, however, determined that the plaintiffs had submitted evidence to refute the city's allegations and thereby established that genuine issues of material fact remained. We thus affirmed the trial court's decision to overrule the city's summary judgment motion. *See also Williams v. Glouster, supra.*

{¶68} We believe that the case at bar bears more similarity to *Kendle* than to *Pierce*.  Similar to the *Kendle* plaintiffs, and unlike the *Pierce* plaintiffs, appellants did not produce any evidence that before October 1, 2020, appellee had actual or constructive notice that the sewer had been clogged or otherwise contained a defect.  Appellants allege that appellee knew the sewer had been clogged in 2018, but they did not produce any evidence to support that allegation.  Instead, the evidence indicates that in 2018, appellants' home experienced a small sewage intrusion and appellants did not report it to appellee.  Appellants did not produce any admissible evidence to show that before October 1, 2020, other residents had complained to appellee about the condition of the sewer.

{¶69} Appellants contend, however, that appellee had "accepted responsibility for" "a similar issue in 2018."  To support this assertion, appellants cite to "Schedule 1, used in the deposition of Kevin Knab (also known as 'W1')."  Knab's deposition does not contain any exhibit identified as "Schedule 1" or "W1."  Thus, we are unable to determine which exhibit appellants' argument references.  It may reference Exhibit 1, however, but if so, Exhibit 1 does not support appellants' assertion that appellee "accepted responsibility for" "a similar issue in 2018."  Rather, Exhibit 1 is a July 23, 2018 letter

that appellee sent to all Washington County Sewer System Customers. In this letter, appellee "urge[d] all customers * * * to investigate and install a sanitary sewer backup solution." Nothing in this letter indicates that appellee "accepted responsibility for" "a similar issue in 2018." Rather, the letter states that appellee "will no longer be able to offer these services after December 31, 2018." The services described in the letter are "sanitary sewer backup solutions." Thus, this letter does not support appellants' assertion that in 2018, appellee was aware of a problem with the sewer located near appellants' home. Appellants additionally note that the record contains some evidence to suggest that county or city employees had been to the Seneca Drive area in the past "to clean a plugged sewer." However, no evidence exists when those employees had been in that area or whether the "plugged sewer" was the same one that became clogged on October 1, 2020.

{¶70} Therefore, we agree with the trial court that in the case sub judice the record does not contain any evidence to create a genuine issue of material fact as to whether, before October 1, 2020, appellee had actual or constructive notice of any clogging, defects, or deterioration with the sewer located by appellants' residence.

{¶71} Furthermore, unlike the plaintiffs' evidence in *Pierce* that stated the city did nothing in response to the plaintiffs' complaint for eight months, in the case sub judice appellants did not submit any evidence to create a genuine issue of material fact as to whether appellee exercised reasonable care to remove the clog once it learned about the issue. Here, the city employees stated that they responded to the area as soon as practical upon learning that appellee had requested its assistance. The evidence shows that the employees responded to the area on the same date that the clog had been reported to appellee. Appellants did not produce any evidence to suggest that appellee delayed requesting the city's assistance or that the city employees failed to respond to the call for help in a timely fashion. Instead, appellants speculate about the absence of business records to support the city employees' deposition testimony. Speculation about the lack of evidence is not sufficient to create a genuine issue of material fact. *Bowersock v. Addlesburger*, 4th Dist. Washington No. 19CA13, 2019-Ohio-5447, ¶ 39 ("[s]peculation is not sufficient to create a genuine issue of material fact so as to defeat a properly supported summary judgment motion"). Consequently, the record in the case at bar does not contain any evidence to create a genuine issue of material fact as to whether appellee

exercised reasonable care to remove the clog once it learned about the issue.

**{¶72}** With regard to appellants' claim that appellee failed to comply with it duty to maintain the sewer and to inspect it at reasonable intervals, we note that the record does not contain any evidence that appellee engaged in routine maintenance or inspection of the sewer. As the party moving for summary judgment, appellee bore the burden to point to evidence in the record to demonstrate the absence of a material fact regarding whether it complied with its duty of routine maintenance and inspection. Construing the record most strongly in appellants' favor indicates that a genuine issue of material fact remains regarding appellants' claim that appellee breached its duty to keep the sewers in good repair and free from defects by engaging in routine maintenance and conducting inspections at reasonable intervals. However, as in *Kendle*, no evidence exists that routine maintenance and inspections at reasonable intervals would have prevented (1) the clog from forming, or (2) the sewage intruding into appellants' home. At best, the evidence shows that the clog may have existed for one week or so. We do not believe that routine maintenance and inspections at reasonable intervals require weekly maintenance and inspection of all sewer lines under a political subdivision's control. We

also do not believe that this issue is a jury question because if it were, inconsistent results could occur.

{¶73} Furthermore, we previously rejected a similar argument in *Essman v. Portsmouth*, 4th Dist. Scioto No. 09CA3325, 2010-Ohio-4837. In that case, the plaintiffs asserted that the city "negligently maintained the [sewer] system because it did not have any type of maintenance plan." *Id.* at ¶ 50. We determined, however, that even if "the city was negligent due to its failure to have a maintenance plan, [the plaintiffs'] evidence fails to show how a maintenance plan would have prevented the sewage intrusions." *Id.* We additionally observed that the plaintiffs' evidence did "not specify what type of maintenance plan the city should have implemented and how the failure to implement this particular maintenance plan resulted in the sewage intrusions." *Id.*

{¶74} Likewise, in the case sub judice, the evidence does not show how a maintenance or inspection plan would have prevented the clog or the sewage intrusion. Furthermore, appellants did not specify the maintenance or inspection schedule that appellee should have implemented and how the failure to implement either caused the sewage intrusion.

{¶75} In sum, we do not believe that the record contains any evidence to establish genuine issues of material fact regarding

appellee's negligence in maintaining or operating the sewer system.  Therefore, any arguments that the parties have raised regarding appellants' comparative negligence are moot.  *Halloran v. Barnard*, 4th Dist. Lawrence No. 16CA9, 2017-Ohio-1069, ¶ 25 (comparative negligence "is not an issue unless the defendant, as well as the plaintiff, was negligent").  Consequently, we agree with the trial court's conclusion in granting appellee summary judgment.

**{¶76}** Accordingly, based upon the foregoing reasons, we overrule appellants' sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.